Delores TAKEN ALIVE, Appellant,

v.

Melvin LITZAU et al., Appellees.

No. 76–1451.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1977.

Decided Feb. 23, 1977.

Albert A. Wolf, Bismarck, N. D., for appellant.

Murray Ogborn, Lincoln, Neb., for appellees.

Before LAY, ROSS and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

This action was brought under 42 U.S.C. § 1983 for damages arising out of an incident at the McLaughlin, South Dakota police station on November 3, 1973. The plaintiff Delores Taken Alive, ·an Indian woman, sued Melvin Litzau, a city police officer, for injuries caused by Litzau during the course of what Litzau claimed was an arrest. The plaintiff also sued Robert Quinn, Chief of the McLaughlin City Police Department, for damages based on Quinn's allegedly negligent supervision of Litzau. The jury found defendant Litzau liable and rendered a verdict in the amount of $10,000. A verdict was directed in favor of Quinn at the close of the plaintiff's case-in-chief.

The case comes before us from an order of the district court denying the plaintiff's motion for a new trial. Two issues are presented for review: 1) whether the jury verdict rendered in favor of the plaintiff is inadequate as a matter of law; and 2) whether the district court improperly directed a verdict in favor of the defendant Quinn at the close of the plaintiff's case. We affirm the judgment below.

On November 2, 1973, the day before the incident, plaintiff's husband was arrested for public intoxication while riding as a passenger in the family car. Pursuant to police and B.I.A. policy, the car was impounded in a privately owned garage. On November 3, 1973, the plaintiff went to the police station for the purpose of either obtaining a house key or a car key from her husband's key ring. A dispute developed between the plaintiff and the defendant Litzau concerning the keys. At the conclusion of the conversation, which lasted between ten to twenty minutes, Officer Litzau approached the plaintiff in order to exercise control over her person.[1] Litzau then applied a "come-along hold" to the plaintiff's left arm by bending her left

---

1. The evidence is in dispute as to whether Officer Litzau announced at this time that the plaintiff was under arrest. Litzau testified that he told Ms. Taken Alive that she was under arrest. The plaintiff testified that she heard no such statement.

wrist downward,[2] and pushed the plaintiff toward the front door of the police station in order to take her to a patrol car, where she was to be detained. As he removed the plaintiff from the police station, Officer Litzau was holding the plaintiff's right arm behind her back. Ms. Taken Alive was forced into a position facing the rear of the patrol car at which time Litzau applied more pressure to the right arm.[3] Litzau heard a cracking sound and, realizing she was hurt, placed the plaintiff in the patrol car and summoned help.

The plaintiff was indeed hurt. As a result of the force used by Officer Litzau to effect her detention, she suffered a spiral comminuted fracture of the distal aspect of the right humerus, and a chip fracture of both her left radius and ulna.

As stated, the jury found Litzau liable for the injuries and returned a general verdict for $10,000 compensatory damages. The jury returned a verdict in favor of the defendant Litzau on the issue of punitive damages. Police Chief Quinn was dismissed from the case after the plaintiff's case-in-chief.

*I. Adequacy of the Jury Verdict.*

▮ In reviewing the trial court's refusal to set aside a jury verdict on the grounds of inadequacy or excessiveness, we apply the following standard:

* * * [I]nadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; * * * we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result.

*Solomon Dehydrating Co. v. Guyton,* 294 F.2d 439, 447–448 (8th Cir.), *cert. denied,* 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961); *see also Richardson v. Communications Workers of America,* 530 F.2d 126, 129 (8th Cir.), *cert. denied,* 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976); *Snodgrass v. Nelson,* 503 F.2d 94, 96 (8th Cir. 1974) (per curiam). An appellate court should be extremely hesitant to overturn a jury verdict which includes damages for pain and suffering, which were included in the general verdict in this case. There is no precise or exact measuring stick for calculating general damages for pain and suffering. Although the jury should not pick a figure out of the air, exact compensation for pain and suffering is impossible. As stated in *Mainelli v. Haberstroh,* 237 F.Supp. 190, 194 (M.D.Pa.1964), *aff'd,* 344 F.2d 965 (3d Cir. 1965):

In the absence of more elaborate and explanatory guidelines for the jury in the somewhat elusive area of pain and suffering, we must expect substantial disparities among juries as to what constitutes adequate compensation for certain types of pain and suffering. This is a litigious fact of life of which counsel, clients and insurance carriers are fully aware. Once they place their fate in the hands of a jury, then they should be prepared for the result, whether the award be considered generously high or penuriously low. They cannot expect the Court to extricate them in all cases where the award is higher or lower than hoped for or anticipated.

---

**2.** Again, the evidence is in dispute as to why Officer Litzau used this force to detain the plaintiff. Litzau testified that the plaintiff resisted arrest by clinging to the chair in which she was seated. This force, according to Litzau, was necessary to pry her out of the chair. The plaintiff testified that she was standing at the time of the alleged arrest.

**3.** Officer Litzau testified that he applied more pressure at this time because the plaintiff had attempted to prevent him from placing her into the patrol car by hooking her arm around the radio antenna. The plaintiff denied that she resisted in this manner.

■ We hold that the $10,000 verdict rendered in this case is not a "plain injustice" or a "monstrous" or "shocking" result.

We initially note that the jury returned a general verdict in excess of the amount of out-of-pocket losses claimed by the plaintiff. Thus we are not confronted with a case in which the jury failed to consider compensation for pain and suffering. *Compare Brown v. Richard H. Wacholz, Inc.*, 467 F.2d 18, 21 (10th Cir. 1972).

Furthermore, the plaintiff's proof of her special damages at trial was exceedingly vague and confusing. Her own proof contained contradictory figures relating to her loss of wages,[4] and the proof relating to her husband's loss of wages was equivocal. There also appears to be some discrepancy between the amount of damages claimed and proved with respect to babysitting and travel expenses.

Because of the inadequacy of specific proof by the plaintiff, it is impossible to determine precisely what amount the jury awarded as special and general damages. It is apparent from the confusing state of the record that the jury could have found that the out-of-pocket damages were considerably less, and the general damages considerably more, than the amount claimed by the plaintiff. It would thus be exceedingly presumptuous of this court to overturn the jury verdict under these circumstances.

Furthermore, the record does show, and the jury was entitled to find, that the plaintiff suffered no permanent disability as a result of the incident. The plaintiff's orthopedic surgeon testified by deposition that the plaintiff should regain full strength and mobility in both of her arms, although he could not predict that she will never experience some pain in the future. We hold, therefore, that the $10,000 jury verdict for compensatory damages was within the discretion of the jury and is not inadequate as a matter of law.[5]

## II. Dismissal of Police Chief Quinn.

The plaintiff's complaint with respect to Chief Quinn was based on his alleged failure to properly supervise, direct, control or limit the improper actions of Officer Litzau. The district court directed a verdict in favor of Quinn at the close of the plaintiff's case-in-chief. We have carefully reviewed the record and find this disposition is correct.

The facts adduced at trial in regard to Quinn are undisputed. Quinn became Chief of Police in May 1973, at a time when disregard for the law was commonplace in the City of McLaughlin. The record indicates that the City's problems resulted to some extent from the actions and inactions of Quinn's predecessor. The uncontroverted evidence is that the City's arrest procedures improved substantially after Quinn became Chief of Police.

It is true that Chief Quinn admitted hearing a rumor concerning one prior incident involving misconduct on the part of Officer Litzau. However, Quinn testified that he discussed the incident at length with Officer Litzau and " * * * was quite satisfied that there would not ever be a recur-

---

4. To compound the confusion, the district court failed to instruct the jury that loss of wages could be awarded as an element of damages. The defendant concedes that the plaintiff was entitled to such an instruction. However, the plaintiff's attorney failed to timely object to the lack of the instruction and, in fact, has not urged this point as error on appeal. We find no prejudicial error, especially in view of the fact that plaintiff's attorney forcefully argued loss of wages to the jury, but caution that such error may require reversal under different circumstances.

5. We reject the plaintiff's speculative claim that the verdict resulted from mistake, misun-

derstanding, bias or prejudice of the jury. Plaintiff's counsel was given a full opportunity before trial to voir dire the prospective jurors. There is nothing in this record even remotely suggesting that the jury acted out of mistake, misunderstanding, bias or prejudice. " * * * [M]ere speculation will not suffice to prove that the jury reached its verdict improperly." *Luck v. B. & O. R. R. Co.*, 166 U.S.App.D.C. 283, 510 F.2d 663, 668 (1975). Such misconduct may only be proved by legally competent evidence, *see generally* 6A J. Moore, Federal Practice ¶ 59.08[a] at 127–128 (2d ed. 1975), which the plaintiff has not offered.

rence of an incident of that nature."[6] Quinn also stated that after assuming his duties as Chief of Police, he worked "day in and day out" with Litzau for several months and was satisfied with his performance.

Furthermore, the evidence shows that Quinn first learned of the incident involving the plaintiff after the fact. He did not cause, encourage, initiate, consent to, authorize, direct or command Officer Litzau to arrest the plaintiff or any other person by use of unreasonable force.

The remote and unrecorded prior incident in which Officer Litzau was implicated, and of which Chief Quinn was aware, was wholly insufficient to raise an inference of liability under 42 U.S.C. § 1983 on the part of Quinn. *See Russ v. Ratliff*, 538 F.2d 799, 805 (8th Cir. 1976), *cert. denied*, —— U.S. ——, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977); *Chestnut v. City of Quincy*, 513 F.2d 91, 92 (5th Cir. 1975). In order to prevail on this aspect of her § 1983 claim, the plaintiff was bound to prove some actual involvement of Quinn in the alleged misconduct. *Jennings v. Davis*, 476 F.2d 1271, 1275 (8th Cir. 1973). The plaintiff has utterly failed to demonstrate Chief Quinn's knowledge of or accountability for Officer Litzau's actions' and the district court properly directed a verdict in Quinn's favor.[7]

The judgment is affirmed.

---

6. Significantly, no official report was filed with respect to this incident and the City Council, which had the sole power to remove Officer Litzau, took no action on the matter.

7. In view of our disposition, we need not, and do not, decide whether the equitable considerations discussed in *Rizzo v. Goode*, 423 U.S. 362, 377–381, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), defeat a claim such as this involving damages for alleged past misconduct.