570 F.2d 240
 Lieutenant W. E. "Sonny" SIMPSON, Appellee,
v.
Gale WEEKS, Chief of Police, Little Rock, Arkansas, John C.
Terry, Assistant Chief of Police, Little Rock, Arkansas, and
Lieutenant Forrest H. Parkman, Officer, Little Rock Police
Department, Appellants.
 No. 77-1331.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 17, 1977.
Decided Jan. 18, 1978.
 
 John I. Purtle, Little Rock, Ark., for appellants.
 William R. Wilson, Jr., Little Rock, Ark., for appellee; Kaneaster Hodges, Jr., Newport, Ark., on the brief.
 Before VAN OOSTERHOUT, Senior Judge, and LAY and STEPHENSON, Circuit Judges.
 LAY, Circuit Judge.
 
 
 1
 In the latter part of 1974 Gale Weeks, formerly the Chief of Police of Little Rock, Arkansas, and several other police officers were charged in a federal district court with violating the civil rights of city prisoners. Shortly after the trial began Weeks, through an informant, learned that one or more city police officers had allegedly discussed the case with Richard Mays, the attorney representing the plaintiffs in the civil rights action. Lieutenant W. E. "Sonny" Simpson was identified as one of those officers.[1] Shortly after he was identified as having conferred with Mays, Chief Weeks transferred Simpson to the city jail. In addition, Simpson received quarterly evaluation ratings which were dramatically lower than the level of his past performance scores. As a result of the transfer and the poor ratings Simpson brought an action under 42 U.S.C. § 1983 charging Weeks, John C. Terry, the Assistant Chief of Police, and Forrest H. Parkman, a police lieutenant, with conspiring to deprive him of his civil rights by restraining his First Amendment right to free speech. The defendants answered that departmental regulations prohibiting the discussion of matters which were the subject of ongoing investigation justified any action taken as a result of their belief that Simpson had spoken with Mays.[2]
 
 
 2
 The trial court, the Honorable Terry L. Shell presiding, found in favor of Simpson and declared his transfer to the jail and the low ratings were constitutionally invalid. The court granted a mandatory injunction requiring Simpson to be reinstated in the position he had held prior to the transfer if he so desired. In addition, the court awarded nominal damages of three dollars against the defendants and assessed punitive damages of $3,000 against Weeks, $2,000 against Terry, and $1,000 against Parkman. Attorney fees were also awarded. We affirm the judgment against the defendants Gale Weeks and John C. Terry and vacate the judgment against Forrest H. Parkman.
 
 
 3
 The defendants raise several issues on appeal which we will discuss seriatim.
 
 
 4
 Exhaustion of Administrative Remedies.
 
 
 5
 The defendants contend that Simpson failed to exhaust his administrative remedies since an appeal of the transfer and ratings to the city's Civil Service Commission was said to have been available. We disagree. It is well settled that exhaustion of administrative remedies is not a prerequisite to a suit under § 1983. See Steffel v. Thompson, 415 U.S. 452, 472-73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); Wolder v. Rahm, 549 F.2d 543, 544 (8th Cir. 1977); Gilliam v. City of Omaha, 459 F.2d 63 (8th Cir. 1972); Stradley v. Andersen, 456 F.2d 1063, 1064 (8th Cir. 1972). See also K. Davis, Administrative Law of the Seventies § 20.01-1, at 452 (1976).[3]
 
 
 6
 Free Speech.
 
 
 7
 Defendants next assert that plaintiff has failed to state a claim for relief in that the alleged impairment of free speech is not cognizable under § 1983. We again disagree. See, e. g., Police Department v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Kannisto v. San Francisco, 541 F.2d 841 (9th Cir. 1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1552, 51 L.Ed.2d 775 (1977). The fact that plaintiff is a public employee does not relegate him to a "watered-down version of constitutional rights." Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). See also Keyishian v. Board of Regents, 385 U.S. 589, 605-06, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). Some restrictions on the speech of a public employee are, however, permissible.
 
 
 8
 (I)t cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.
 
 
 9
 Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).
 
 In the instant case Judge Shell noted:
 
 10
 Without hesitation, the Court concludes that interests of the plaintiff as a subpoenaed witness in a United States District Court proceeding in commenting to an attorney associated with that case concerning any matters related to that case override the interests of the police department in regulating his speech.
 
 
 11
 On the record before us we cannot say that this finding is clearly erroneous.
 
 
 12
 Conspiracy.
 
 
 13
 The defendants contend that a civil conspiracy charge is improper under § 1983 and challenge the trial court's finding that they engaged in a civil conspiracy. The Seventh Circuit, in Hostrop v. Board of Junior College District No. 515, 523 F.2d 569 (7th Cir. 1975), holding that § 1983 could support a charge of civil conspiracy, explained:
 
 
 14
 The doctrine of civil conspiracy extends liability for a tort, here the deprivation of constitutional rights, to persons other than the actual wrongdoer, W. Prosser, The Law of Torts § 46 at 293 (4th ed. 1971), but it is the acts causing damage to the plaintiff that give rise to liability for damages, not the conspiracy itself.
 
 
 15
 "The damage for which recovery may be had in a civil action is not the conspiracy itself but the injury to the plaintiff produced by specific overt acts. (Citations omitted.) The charge of conspiracy in a civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible for any overt act or acts." Rutkin v. Reinfeld, 229 F.2d 248, 252 (2d Cir. 1956), cert. denied, 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956).
 
 
 16
 Id. at 576.
 
 
 17
 See also Mizell v. North Broward Hospital District, 427 F.2d 468, 472-73 (5th Cir. 1970); Hoffman v. Halden, 268 F.2d 280, 292-94 (9th Cir. 1959), overruled on other grounds, Cohen v. Norris, 300 F.2d 24, 29-30 (9th Cir. 1962).
 
 
 18
 The record establishes that Weeks and his assistant, Terry, jointly and individually acted to deprive Simpson of his civil rights. Terry was fully cognizant of Weeks' vendetta against Simpson and acted on his own initiative and in bad faith in several instances to further the conspiracy. The evidence that both Weeks and Terry acted in bad faith and with malice in depriving Simpson of his civil rights is strongly supported in the record.
 
 
 19
 The record is, however, inadequate to support a finding that Parkman acted either in concert with Weeks and Terry or independently to deprive Simpson of his First Amendment rights. Simpson relies primarily upon two incidents to establish Parkman's liability. First, he argues that Parkman was involved in a meeting between Terry and Sergeant Charles Goodwin, Jr., at which Parkman purportedly said that Simpson was "the redheaded son-of-a-bitch that's going and giving information." No relationship between this statement and any overt act intended to deprive Simpson of his civil rights is established in the record. The second incident alleged as establishing Parkman's culpability is the handling of a drug charge against Charles Crawford, a former member of the city's Civil Service Commission. After reviewing the record we conclude the evidence of any wrongdoing by Parkman in connection with the Crawford matter was at best inconclusive and that the relationship of the Crawford matter to Simpson's case was tenuous. We therefore vacate the judgment against Lieutenant Parkman.
 
 
 20
 Damages.
 
 
 21
 Defendants challenge the award of punitive damages under § 1983. Since we have found the evidence insufficient to implicate Parkman in the effort to deprive Simpson of his civil rights the award of punitive damages against Parkman must be dismissed. The award of punitive damages against Weeks and Terry is, however, amply supported by the evidence. See Nader v. Allegheny Airlines, Inc., 167 U.S.App.D.C. 350, 374, 512 F.2d 527, 551 (1975), rev'd on other grounds, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976); D. Dobbs, Law of Remedies § 3.9, at 204-06 (1973). Cf. Bond v. Local 823 International Brotherhood of Teamsters, 521 F.2d 5, 9-10 (8th Cir. 1975). We endorse the view of the Fifth Circuit in this regard:
 
 
 22
 The general rule as to punitive damages, repeatedly found in the reported cases, is that they may be imposed if a defendant has acted wilfully and in gross disregard for the rights of the complaining party. Since such damages are punitory and are assessed as an example and warning to others, they are not a favorite in law and are to be allowed only with caution and within narrow limits.
 
 
 23
 The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of the fact.
 
 
 24
 Lee v. Southern Home Sites Corp., 429 F.2d 290, 294 (5th Cir. 1970) (citations omitted).Attorney Fees.
 
 
 25
 The last issue raised by defendants relates to the award of attorney fees in the district court and the application for attorney fees made to this court. It is urged that Congress did not intend to allow attorney fees in § 1983 actions under The Civil Rights Attorney's Fees Awards Act of 1976, P.L. No. 94-559, 90 Stat. 2641 (amending 42 U.S.C. § 1988). This is a frivolous contention.[4]
 
 
 26
 Weeks also contends that the Act should not apply in this case since the case was commenced before the passage of the Act. Judge Heaney addressed this specific issue in the recent case of Williams v. Anderson, 562 F.2d 1081, 1102 (8th Cir. 1977), wherein he said:
 
 
 27
 It is clear from the legislative history of the Act that Congress intended it to apply to all pending cases, including cases pending on appeal. See 122 Cong.Rec. 17,052 (daily ed. Sept. 29, 1976), and 12,155, 12,160 and 12,667 (daily ed. Oct. 1, 1976). See also Bradley v. School Board of Richmond, (382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187) supra; Finney v. Hutto, 548 F.2d 740, 742 (8th Cir. 1977). Thus, the award of attorneys' fees was appropriate in this case.
 
 
 28
 See also Gay Lib v. University of Missouri, 558 F.2d 848, 857 (8th Cir. 1977). Thus, the award of attorney fees was proper. Similarly plaintiffs are entitled to a reasonable fee on appeal. See Williams v. Anderson, supra; Allen v. Transit Union Local 788, 554 F.2d 876, 884 (8th Cir.), cert. denied, --- U.S. ----, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). We find a reasonable attorney fee for processing the appeal to be $750.00.
 
 
 29
 The judgment against Weeks and Terry is affirmed; the judgment against Parkman is reversed and vacated.
 
 
 
 [1]
 Chief Weeks later conceded that Simpson had not spoken with Richard Mays
 
 
 [2]
 The regulation provided that:
 Section A. No member of the department shall make known any information concerning the progress of an investigation a known or reported law violation of condition against which action is to be taken at a future time, or any proposed police operation of any type to any person not authorized to receive it.
 Section B. It is expressly forbidden to give any lawyer, bondman, or the agent of either, or any other person, unauthorized information regarding prisoners in confinement.
 
 
 [3]
 The defendants rely on Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970), and Blanton v. State Univ. of New York, 489 F.2d 377 (2d Cir. 1973), to support their position that Simpson should have been required to exhaust available state administrative remedies before he brought an action in federal court. Although the idea that exhaustion under § 1983 should not be given a "wooden application" is appealing, the Second Circuit has itself questioned the continued validity of Eisen and Blanton in light of Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). See Plano v. Baker, 504 F.2d 595, 597 (2d Cir. 1974). But see Mitchell v. National Broadcasting Co., 553 F.2d 265, 276 (2d Cir. 1977). In any event, until the Supreme Court changes its position on the exhaustion requirement we are reluctant to speculate on the advisability of any other rule
 
 
 [4]
 Defendants contend in their reply brief:
 The Civil Rights Attorney's Fees Awards Act of 1976 was passed on October 19, 1976, wherein they amended 42 U.S.C. 1988 by allowing fees in cases under Sections 1977, 1978, 1979, 1980 and 1981. For some reason 1983 was not added to the causes for which attorneys fees could be allowed and we must presume Congress knew what it was doing.
 The sections cited in the Act refer, however, to the Revised Statutes not to the United States Code sections. Section 1983 is also Revised Statutes § 1979. Thus, it is clear that the Act includes § 1983 actions.