**Michael D. ELLIS, Appellant,**

v.

**Francis KNEIFL, Individually and as Judge for the State District Court of Nebraska, Cedar County, Appellee.**

No. 87–1098.

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1987.

Decided Nov. 25, 1987.

William J. Morris, Lincoln, Neb., for appellant.

A.J. Swanson, Sioux Falls, S.D., for appellee.

Before McMILLIAN, Circuit Judge, FAIRCHILD,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

---

* The Honorable Thomas E. Fairchild, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

JOHN R. GIBSON, Circuit Judge.

Michael Ellis appeals from the district court's [1] order granting summary judgment to defendant Francis Kneifl, a Nebraska state trial court judge, on Ellis' civil rights claims brought under 42 U.S.C. § 1983 (1982) and Neb.Rev.Stat. § 28–926 (1985). Kneifl had accepted Ellis' guilty plea on a charge of issuing a no-account check, and sentenced him to one to five years' imprisonment. Ellis claims that Kneifl conspired with Shirley Arens, clerk of the court in which Kneifl sat, and Duane Peterson, Ellis' court-appointed attorney, to prevent perfection of Ellis' appeal from his conviction. On this appeal, Ellis first argues that the district court erred in rejecting, as hearsay, testimony that Arens told others that Kneifl had instructed her not to forward Ellis' appeal documents. Ellis argues that Arens was Kneifl's agent and her statements are admissible as admissions of a party opponent under Fed.R.Evid. 801(d)(2)(D). Next, Ellis argues that, even without the excluded testimony, he has shown the existence of a material question of fact as to whether Kneifl conspired against him. We affirm the judgment of the district court.

Ellis pleaded guilty in December, 1979 in the Cedar County district court to a charge of issuing a no-account check. Duane Peterson acted as Ellis' court-appointed attorney. Judge Kneifl sentenced Ellis to one to five years' imprisonment, to run concurrently with two consecutive six-month sentences Ellis had received in another county. Peterson did not file a motion for new trial, but when he learned that Ellis wished to appeal the conviction, filed a Notice of Intent to Appeal and related documents in the Cedar County district court on February 8, 1980.

Pursuant to Neb.Rev.Stat. § 25–1912 (1985) (amended 1986), once a Notice of Intent to Appeal has been filed, the clerk of the district court (in this case, Shirley Arens) is required to forward the Notice to the Nebraska Supreme Court, where the appeal will be processed. However, in Ellis' case the Notice of Intent to Appeal and other documents were not forwarded to the Supreme Court, and consequently the appeal was not processed in that court.

On October 4, 1982 Ellis filed a Motion to Vacate Sentence and a Request for Appointment of Counsel in the Cedar County court. The Motion alleged that Ellis had received ineffective assistance of counsel in connection with the no-account check conviction. One of his specific claims was that Peterson had failed to appeal his conviction. There was no allegation in the motion of any wrongdoing by Kneifl. Kneifl denied the motion on November 4, 1982. On November 18, 1982 Ellis filed a Notice of Appeal from the denial of his Motion to Vacate Sentence, a Motion for Appointment of Counsel on Appeal, a Motion for Leave to Proceed in Forma Pauperis and a Praecipe for Transcript and Bill of Exceptions. Kneifl denied the motions for Appointment of Counsel and Leave to Proceed in Forma Pauperis on the grounds that the appeal was frivolous.

Ellis then filed a petition for federal habeas corpus relief. Ralph Gillan, the assistant attorney general for Nebraska who handled the case, discovered that the Notice of Intent to Appeal the conviction had been filed, but not forwarded to the Nebraska Supreme Court. He telephoned and spoke to a woman who identified herself as the clerk of the district court of Cedar County. Gillan testified that when he asked the woman why the Notice of Intent to Appeal had not been forwarded to the Nebraska Supreme Court, she said Kneifl had told her not to forward it.

John Cariotto, Acting Clerk of the Nebraska Supreme Court, also called the Cedar County courthouse and also spoke with a person who identified herself either as Shirley Arens or the clerk. Cariotto testified that the person he spoke with told him she had not forwarded the appeal documents because "the Judge" had told her not to.

---

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

The appeal documents were finally forwarded to the Nebraska Supreme Court, and Ellis' conviction and sentence were reversed in March, 1984 on the grounds that Ellis had been convicted as a repeat offender without the requisite showing of an earlier valid conviction.

Ellis brought this suit against Kneifl, Peterson and Arens, claiming that the three had violated 42 U.S.C. § 1983 and Neb.Rev.Stat. § 28–926 by conspiring to deprive him of his right to appeal his conviction and sentence.[2] Specifically, he alleged Kneifl had ordered Arens not to forward the appeal documents to the Supreme Court.

Kneifl filed a motion for summary judgment with supporting affidavits, arguing that there was no genuine issue of fact as to whether he had given any such order. The record on the motion reveals evidence from all three alleged conspirators that Kneifl did not order or even suggest that Arens withhold Ellis' appeal documents.

Peterson testified that after filing the Notice of Intent to Appeal, he went to see Judge Kneifl on February 21, 1980 and asked his advice about proceeding in the Ellis appeal. Kneifl and Peterson met in the clerk's office and then went into Kneifl's chambers, where Kneifl told Peterson that his duties as court-appointed attorney were over and that he was not obliged to represent Ellis in any other court. Kneifl also proferred his opinion that an appeal would be "useless" because the Nebraska Supreme Court would not consider it.

Peterson further testified that after his conversation with Kneifl, he returned to the clerk's office. Arens asked Peterson "What happens now?" and Peterson told her "it was probably useless to send the appeal on." Peterson denied that Kneifl ordered him not to prosecute an appeal.

Arens testified that since the necessary filing fee had not been deposited with the Notice of Intent to Appeal, she asked Peterson and Kneifl whether she should forward the appeal papers to the Supreme Court. She said that Kneifl never answered her question, but that Kneifl and Peterson discussed the case in the clerk's office, in her hearing. She said that when she heard Kneifl tell Peterson that Peterson's role as appointed counsel was over, she "assumed that [she] would do nothing and wait for orders from somebody else...." Arens denied that Kneifl ordered her not to forward the appeal papers.

Kneifl's statements agree with Peterson's and Arens' testimony. He denied that he ever ordered that Ellis' appeal documents be withheld from the Nebraska Supreme Court.

The district court granted Kneifl's motion, holding that the Gillan and Cariotto evidence was inadmissible hearsay and that Ellis had offered no other evidence that Kneifl participated in any conspiracy regarding Ellis' appeal.

Ellis first argues that the district court erred in holding Gillan's and Cariotto's deposition testimony about their telephone conversations with the clerk of court was inadmissible hearsay. The district court's determinations regarding admission of evidence will be reversed only on a showing of clear and prejudicial abuse of discretion. *Roth v. Black & Decker, U.S., Inc.,* 737 F.2d 779, 783 (8th Cir.1984).

Ellis contends that Gillan's and Cariotto's statements are not hearsay, but admissions under Fed.R.Evid. 801(d)(2)(D),[3] or "statement[s] by [the party's] agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." Ellis claims Arens was Kneifl's agent and, therefore, able to make admissions for him.

---

2. The claims against Arens and Peterson were dismissed after summary judgment was entered for Kneifl.

3. Fed.R.Evid. 801(d)(2)(D) provides:

A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship....

■ Ellis makes two arguments to support his position. First, he argues that Nebraska law makes the clerk of the district court the agent of the district court judge. Ellis relies on Neb.Rev.Stat. § 25–2214 (1985), which provides:

The clerk of each of the courts shall exercise the powers and perform the duties conferred and imposed upon him by other provisions of this code, by other statutes and by the common law. In the performance of his duties he shall be under the direction of his court.

Though section 25–2214 authorizes the judge to exercise some control over the clerk, it does not create an agency relationship. A necessary attribute of an agency relationship is that the agent is empowered to act on the principal's behalf. *See Reeves v. Associates Financial Services Co.*, 197 Neb. 107, 247 N.W.2d 434, 438 (1976). Section 25–2214 does not authorize the clerk to act on the judge's behalf, but only to assure that the clerk performs his duties to the court. By submitting to the court's authority under § 25–2214, the clerk no more becomes the judge's agent than does any other person to whom the judge, in exercise of his judicial authority, may issue an order. Moreover, under Nebraska law the district court clerk is an elected county official, Neb.Rev.Stat. § 32–307 (1984), a fact the district court recognized in concluding that she was not the agent of Judge Kneifl.

■ Furthermore, even if section 25–2214 did create an agency relationship between judge and clerk, an act by Arens in contravention of her statutory duties would be outside the scope of the agency. The statute provides for the clerk to act under the court's direction "[i]n the performance of his duties," which are those duties "conferred and imposed upon him by other provisions of this code, by other statutes and by the common law." The statute does not command the clerk to act under the court's direction generally, but only with reference to performing enumerated duties. Section 25–2214 certainly does not make the clerk the court's agent for the purpose of violating the mandate of § 25–1912 to forward notices of appeal to the Clerk of the Supreme Court. Ellis has cited a number of cases indicating that the district court has jurisdiction to order the clerk to carry out his legitimate ministerial duties,[4] but these cases only reiterate the dictate of § 25–2214; they do not suggest that the district court judge is empowered to order the clerk to do anything the judge chooses, including the omission of mandated duties, such as forwarding notices of appeal to the Clerk of the Supreme Court.

Since Fed.R.Evid. 801(d)(2)(D) applies only to statements by the agent "concerning a matter within the scope of the agency" and the alleged statements concern a matter outside the scope of any agency that could be created under section 25–2214, Ellis' reliance on section 25–2214 is unfounded.

■ Ellis also argues that Arens acted as Kneifl's agent pursuant to an agency agreement between Kneifl and Arens. This argument may be dismissed summarily, for the only evidence even vaguely supporting any such agency agreement would be Arens' alleged statements to Cariotto and Gillan. However, the existence of an agency relation cannot be proved by the alleged agent's extra-judicial statements. *United States v. Jones*, 766 F.2d 412, 415 (9th Cir.1985). Accordingly, Ellis may not rely on extra-judicial statements by Arens to show that Arens acted as Kneifl's agent in withholding the Notice of Intent to Appeal.

■ Ellis next argues that even without the Gillan and Cariotto hearsay, the record shows a genuine issue of fact regarding whether Kneifl, Arens and Peterson engaged in a conspiracy to deny his right of appeal.

In reviewing a district court decision granting a motion for summary judgment,

---

4. *State ex rel. Wilkins v. LeFevre*, 25 Neb. 223, 41 N.W. 184 (1888) (jurisdiction to order clerk to make certain records); *State ex rel. Solman v. Moores*, 29 Neb. 122, 45 N.W. 278 (1890) (jurisdiction to order clerk to order foreclosure sale); *State ex rel. Fitzgerald v. Houseworth*, 63 Neb. 658, 88 N.W. 858 (1902) (jurisdiction to order clerk to approve supersedeas bond).

we are governed by the same standard as the district court. *Krause v. Perryman,* 827 F.2d 346, 350 (8th Cir.1987). Kneifl's motion can only be granted if, taking all the evidence in the light most favorable to Ellis' case, the court can find no genuine issue of material fact. *Id.* Applying this standard, we are satisfied that the evidence does not support an inference that Kneifl conspired to withhold Ellis' appeal documents.

The facts Ellis relies on depend on the same reasoning: that Kneifl must have reviewed Ellis' file in ruling on the various post-conviction motions; that he should have learned from such review that Arens had failed to forward the Notice of Intent to Appeal; and that "[h]e took no action to correct the problem, nor to inquire of any source as to why this highly irregular and illegal series of events was taking place."

Of course, there can be no conspiracy without at least an implied agreement among the conspirators. *Morton Buildings of Nebraska, Inc. v. Morton Buildings, Inc.,* 531 F.2d 910, 917 fn. 9 (8th Cir.1976). Though it is true that conspiracy is usually established through circumstantial evidence, and summary judgment may only be entered for Kneifl if the evidence presented by Ellis is insufficient to support any reasonable inference of a conspiracy, *see Westborough Mall v. City of Cape Girardeau,* 693 F.2d 733, 743 (8th Cir.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2122, 77 L.Ed.2d 1303 (1983), in this case Ellis has shown no admissible evidence that would warrant submitting his conspiracy claim to a jury. The direct and unimpeached testimony of Kneifl, Arens and Peterson all confirms that Arens' decision to withhold the Notice of Appeal was her unilateral act, the result of a misunderstanding conceived in overhearing a conversation to which she was not a party. Peterson's comment to Arens that sending the appeal on was "useless" may have fueled her misconception, but there is no evidence that Kneifl can be held responsible for Peterson's ambiguous comment. The motions for post-conviction relief were filed more than two years after Arens decided to keep Ellis' Notice in Cedar County until further notice. The fact that Kneifl could have seen the Notice in the Cedar County file when ruling on the post-conviction motions is not grounds for inferring that he conspired with Arens to bring about her action years earlier.

In light of Ellis' failure to produce any probative facts to rebut Kneifl's evidence that he did not participate in a conspiracy, the district court's entry of summary judgment was proper. *See Love v. King,* 784 F.2d 708, 711 (5th Cir.1986) (directed verdict proper where plaintiff failed to rebut defendant's denial of conspiracy or to provide evidence of conspiracy raising inference "within the range of reasonable probability").

The judgment is affirmed.