CITY OF OMAHA EMPLOYEES
BETTERMENT ASSOCIATION;
Robert Choate; Carol Worley;

Avis Linstrom, Appellee,

Sylvia Love and Sandra Hatfield

v.

CITY OF OMAHA

AFSCME Local 251; a labor union and
Ed Cox, President, and City Labor Re-
lations Director, all officially and indi-
vidually, Appellants.

Richard LEUCK

v.

The CITY OF OMAHA, its managers
and employees; and AFSCME Local
251, its officers and members.

CITY OF OMAHA EMPLOYEES
BETTERMENT ASSOCIATION;
Robert Choate, Appellants,

Carol Worley,

Avis Linstrom; Sylvia Love, Appellants,

and Sandra Hatfield

v.

CITY OF OMAHA,

AFSCME Local 251; a labor union and
Ed Cox, President, Appellee,

and City Labor Relations Director, all
officially and individually.

Richard LEUCK

v.

The CITY OF OMAHA, its managers
and employees; and AFSCME Local
251, its officers and members.

Nos. 88–2370, 88–2408.

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1989.

Decided Aug. 28, 1989.

Thomas F. Dowd, Omaha, Neb., for appellant.

Steven Lefler, Omaha, Neb., for appellee.

Before JOHN R. GIBSON, Circuit Judge, MARKEY,* Chief Judge, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

In the principal case, No. 88–2370, AFSCME Local 251 and its president, Ed Cox,[1] appeal from a judgment entered in the United States District Court for the District of Nebraska in favor of plaintiff-appellee Linstrom on her 42 U.S.C. § 1985 claim alleging that the City of Omaha and the city employees' union conspired to deny her a promotion because of her sex. The original lawsuit was filed by plaintiff Avis Linstrom and three others alleging civil rights violations by the City and the Union. The jury returned a verdict in favor of the City and against the other three plaintiffs on all of their causes of action. The jury found against Linstrom on her claims that she had been discriminated against for dating a black man and having a child by him, and for exercising her first amendment rights in criticizing the Union. However,

the jury found in Linstrom's favor on her 42 U.S.C. § 1985(3) claim that the Union and City conspired to deny her a promotion based upon her sex. The district court denied the Union's motions for a directed verdict and for judgment notwithstanding the verdict. The Union appeals, contending that the evidence is insufficient as a matter of law to support a finding that it conspired with the City to deprive Linstrom of her civil rights. We agree, and accordingly we reverse.

We begin by identifying our standard of review. The same standards apply to the granting of judgment n.o.v. and a directed verdict. *Armstrong v. Republic Realty Mortgage Corp.*, 631 F.2d 1344, 1351 (8th Cir.1980). "[W]e must view the evidence in the light most favorable to the party who prevailed before the jury." *Pumps & Power Co. v. Southern States Industries*, 787 F.2d 1252, 1258 (8th Cir. 1986). This means that we

(1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

*Id.*, (quoting *Jones v. Edwards*, 770 F.2d 739, 740 (8th Cir.1985)) (citations omitted).

Conversely, we are not to accord a party "the benefit of unreasonable inferences, or those 'at war with the undisputed facts.'" *Marcoux v. Van Wyk*, 572 F.2d 651, 653 (8th Cir.1978) (quoting *Schneider v. Chrysler Motors Corp.*, 401 F.2d 549, 555 (8th Cir.1968)). A mere scintilla of evidence is inadequate to support a verdict; rather, the evidence must be "substantial." *Marcoux*, 572 F.2d at 654. While "a measure of speculation and conjecture" may be necessary for the jury to "choos[e] what seems to them to be the most reasonable inference," *Lavender v. Kurn*, 327 U.S.

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

1. For the sake of convenience, hereinafter we refer to the Local and Cox collectively as "the Union."

645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946), we have reversed the denial of a motion for judgment n.o.v. on a record "contain[ing] no proof, beyond speculation" supporting the verdict. *Pumps & Power Co.*, 787 F.2d at 1258.

■■■ In order to establish the existence of conspiracy under § 1985(3), the plaintiff must prove:

> that the defendants did (1) "conspire ... (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." ... that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971) (quoting 42 U.S.C. § 1985(3)). The "purpose" element of the conspiracy requires that the plaintiff prove a class-based "invidiously discriminatory animus." *Id.* at 102 & n. 10, 91 S.Ct. at 1798 & n. 10. Moreover, the plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement. *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir.1988). She can satisfy this burden by "point[ing] to at least some facts which would suggest that appellees 'reached an understanding' to violate [her] rights." *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir.1989) (quoting *Myers v. Morris*, 810 F.2d 1437, 1454 (8th Cir.1987), *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1988).

The Union's contentions on appeal are quite simple; it avers that none of the evidence adduced by Linstrom at trial demonstrates, either directly or circumstantially, that the Union entered into an agreement with the City to deny Linstrom a promotion or that the Union harbored any gender-based animosity toward Linstrom or women in general. Linstrom responds with a long and rambling recitation of various events; hiring procedures; former litigation and grievances involving her employment; and accounts of alleged relationship and cooperation between the City and the Union in personnel matters. Much of this material is simply irrelevant to the issues on appeal, and most of it may be considered of dubious relevance at best. Linstrom's appellate counsel makes little, if any, attempt to relate the evidence to the legal issues by explaining how it could support a finding that the Union entered into a conspiracy with the City to deny Linstrom a promotion. *See* Fed.R.App.P. 28(a)(4), (b) (appellate briefs shall contain argument stating the contentions of the parties with respect to the issues and the reasons therefor). Our review is further complicated because the trial court did not specify the evidence it relied upon in denying the motions for directed verdict and judgment n.o.v. However, we shall proceed to assay the record for evidence sufficient to support the verdict.

Taking the evidence in the light most favorable to Linstrom, and giving her the benefit of all reasonable inferences, we will assume, without deciding, that the record contains substantial support for each of the following facts. The City discriminates (or at least did before Linstrom filed her lawsuit) against women in its personnel policies, and Linstrom's failure to receive a promotion was the result of this discrimination. The City and the Union worked "hand in hand" on personnel matters. Linstrom obliquely contends that the Union did not take adequate steps to end discrimination by the City, even though it knew that the City discriminated on the basis of sex. The Union's top management is composed of men. The Union's president and vice president were given time during work hours for Union activities, and are apparently now paid by the City for work done on behalf of the Union. The Union filed a suit in order to prevent an organization Linstrom helped to establish from representing employees in their grievances with the City. The Union and City ultimately renegotiated their contract so that only individuals or the Union could represent employees.

Linstrom was laid off in 1980. She was the only "functional employee" (the parties

do not define this term) and the only fe-
male affected. At some point, the Union
and City renegotiated the contract with the
result that Linstrom lost ten years of se-
niority.[2]

Linstrom, who is white, had a relation-
ship with a black man, and bore his son.
She took maternity leave, but was denied
additional sick leave, which she had re-
quested because of medical complications.
She testified that white women with white
children were allowed sick leave in conjunc-
tion with maternity leave.

■ We agree with the Union that
none of this even remotely establishes that
the Union harbored any animus toward
women or conspired to deny Linstrom a
promotion. Even if the Union knew that
the City discriminated against women and
failed to take appropriate measures, that
alone certainly does not establish the exist-
ence of an agreement to deny Linstrom a
promotion on account of her sex. Mere
knowledge of another's wrongdoing is in-
sufficient to hold a party liable as a con-
spirator. *See Ellis v. Kneifl*, 834 F.2d 128,
131–32 (8th Cir.1987) (that judge should
have noticed that clerk of court had not
filed prisoner's notice of appeal was not
sufficient ground for inferring that judge
and clerk conspired to deny prisoner right
to appeal); *Rogers v. Rulo*, 712 F.2d 363,
366 (8th Cir.) (directed verdict upheld in
favor of police chief; no evidence chief
caused or consented to alleged misconduct)
(citing *Taken Alive v. Litzau*, 551 F.2d 196,
200 (8th Cir.1977)), *cert. denied*, 464 U.S.
1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1983);
*Lohr v. Ass'n of Catholic Teachers, Local
1776*, 416 F.Supp. 619, 622 (E.D.Pa.1976)
(employer's enforcement of collective bar-
gaining agreement requiring that nonunion
employees submit annual fees to union in-
sufficient to tie employer to alleged con-
spiracy to make illegal disbursement of
collected funds, even if employer knew of
illegal activity).

■ Nor are we convinced that the Un-
ion's involvement with personnel matters is
substantially probative. No evidence ex-
ists to show that the City delegated person-
nel decisions to the Union. *See Gay v.
Waiters' & Dairy Lunchmen's Union, Lo-
cal No. 30*, 489 F.Supp. 282, 294 (N.D.Ca.
1980), *aff'd*, 694 F.2d 531 (9th Cir.1982).
Mere communications concerning personnel
matters are insufficient to establish an
agreement to conspire against an individual
employee. *Cf. Simpson v. Weeks*, 570 F.2d
240, 243 (8th Cir.1978) (meeting at which
defendant made statement hostile toward
plaintiff not shown to have a relationship
to any overt act intended to deprive plain-
tiff of civil rights). Although taken from
another context, the following discussion is
instructive:

> proof that a manufacturer terminated
> plaintiff's dealership following, or even
> in response to, complaints by competing
> dealers, is legally insufficient to support
> a jury finding of concerted action....
> [A] manufacturer and dealer have many
> legitimate reasons for exchanging infor-
> mation ...; to impose liability [because
> of such] "highly ambiguous evidence,"
> would deter commercially useful commu-
> nications.

*McCabe's Furniture, Inc. v. La–Z–Boy
Chair Co.*, 798 F.2d 323, 327–28 (8th Cir.
1986), *cert. denied*, — U.S. —, 108 S.Ct.
1728, 100 L.Ed.2d 193 (1988). Similar con-
cerns are implicated here.

Accordingly, in No. 88–2370 we reverse
the district court's denial of the Union's
motions for directed verdict and judgment
n.o.v. The appeal in the companion case,
No. 88–2408, has not been separately
briefed so as to require separate discus-
sion, and is dismissed. *See* 8th Cir.R. 13.

**2.** Linstrom's brief contends that her name came
up during these negotiations, but cites as sup-
port testimony objected to as hearsay. The ob-
jection was sustained, and the jury was instruct-
ed not to consider the evidence. We do not
consider it either, and view with the strongest
disapproval counsel's reliance on the testimony

and his failure to disclose that it was the object
of a successful objection. However, even if the
evidence had been admitted, we would not con-
sider it significantly probative of sex discrimina-
tion by the Union, as the precise nature of the
comments regarding Linstrom is not revealed.