883 F.2d 650
 50 Fair Empl.Prac.Cas. 1265,
51 Empl. Prac. Dec. P 39,271
CITY OF OMAHA EMPLOYEES BETTERMENT ASSOCIATION; Robert
Choate; Carol Worley;
Avis Linstrom, Appellee,
Sylvia Love and Sandra Hatfield
v.
CITY OF OMAHA
AFSCME Local 251; a labor union and Ed Cox, President, and
City Labor Relations Director, all officially and
individually, Appellants.
Richard LEUCK
v.
The CITY OF OMAHA, its managers and employees; and AFSCME
Local 251, its officers and members.
CITY OF OMAHA EMPLOYEES BETTERMENT ASSOCIATION; Robert
Choate, Appellants,
Carol Worley,
Avis Linstrom; Sylvia Love, Appellants,
and Sandra Hatfield
v.
CITY OF OMAHA,
AFSCME Local 251; a labor union and Ed Cox, President, Appellee,
and City Labor Relations Director, all officially and individually.
Richard LEUCK
v.
The CITY OF OMAHA, its managers and employees; and AFSCME
Local 251, its officers and members.
 Nos. 88-2370, 88-2408.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 10, 1989.
Decided Aug. 28, 1989.
 
 Thomas F. Dowd, Omaha, Neb., for appellant.
 Steven Lefler, Omaha, Neb., for appellee.
 Before JOHN R. GIBSON, Circuit Judge, MARKEY,* Chief Judge, and HENLEY, Senior Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 In the principal case, No. 88-2370, AFSCME Local 251 and its president, Ed Cox,[1] appeal from a judgment entered in the United States District Court for the District of Nebraska in favor of plaintiff-appellee Linstrom on her 42 U.S.C. Sec. 1985 claim alleging that the City of Omaha and the city employees' union conspired to deny her a promotion because of her sex. The original lawsuit was filed by plaintiff Avis Linstrom and three others alleging civil rights violations by the City and the Union. The jury returned a verdict in favor of the City and against the other three plaintiffs on all of their causes of action. The jury found against Linstrom on her claims that she had been discriminated against for dating a black man and having a child by him, and for exercising her first amendment rights in criticizing the Union. However, the jury found in Linstrom's favor on her 42 U.S.C. Sec. 1985(3) claim that the Union and City conspired to deny her a promotion based upon her sex. The district court denied the Union's motions for a directed verdict and for judgment notwithstanding the verdict. The Union appeals, contending that the evidence is insufficient as a matter of law to support a finding that it conspired with the City to deprive Linstrom of her civil rights. We agree, and accordingly we reverse.
 
 
 2
 We begin by identifying our standard of review. The same standards apply to the granting of judgment n.o.v. and a directed verdict. Armstrong v. Republic Realty Mortgage Corp., 631 F.2d 1344, 1351 (8th Cir.1980). "[W]e must view the evidence in the light most favorable to the party who prevailed before the jury." Pumps & Power Co. v. Southern States Industries, 787 F.2d 1252, 1258 (8th Cir.1986). This means that we
 
 
 3
 (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.
 
 
 4
 Id., (quoting Jones v. Edwards, 770 F.2d 739, 740 (8th Cir.1985)) (citations omitted).
 
 
 5
 Conversely, we are not to accord a party "the benefit of unreasonable inferences, or those 'at war with the undisputed facts.' " Marcoux v. Van Wyk, 572 F.2d 651, 653 (8th Cir.1978) (quoting Schneider v. Chrysler Motors Corp., 401 F.2d 549, 555 (8th Cir.1968)). A mere scintilla of evidence is inadequate to support a verdict; rather, the evidence must be "substantial." Marcoux, 572 F.2d at 654. While "a measure of speculation and conjecture" may be necessary for the jury to "choos[e] what seems to them to be the most reasonable inference," Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946), we have reversed the denial of a motion for judgment n.o.v. on a record "contain[ing] no proof, beyond speculation" supporting the verdict. Pumps & Power Co., 787 F.2d at 1258.
 
 
 6
 In order to establish the existence of conspiracy under Sec. 1985(3), the plaintiff must prove:
 
 
 7
 that the defendants did (1) "conspire ... (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." ... that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."
 
 
 8
 Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798-99, 29 L.Ed.2d 338 (1971) (quoting 42 U.S.C. Sec. 1985(3)). The "purpose" element of the conspiracy requires that the plaintiff prove a class-based "invidiously discriminatory animus." Id. at 102 & n. 10, 91 S.Ct. at 1798 & n. 10. Moreover, the plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement. Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir.1988). She can satisfy this burden by "point[ing] to at least some facts which would suggest that appellees 'reached an understanding' to violate [her] rights." Nelson v. City of McGehee, 876 F.2d 56, 59 (8th Cir.1989) (quoting Myers v. Morris, 810 F.2d 1437, 1454 (8th Cir.1987), cert. denied, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1988).
 
 
 9
 The Union's contentions on appeal are quite simple; it avers that none of the evidence adduced by Linstrom at trial demonstrates, either directly or circumstantially, that the Union entered into an agreement with the City to deny Linstrom a promotion or that the Union harbored any gender-based animosity toward Linstrom or women in general. Linstrom responds with a long and rambling recitation of various events; hiring procedures; former litigation and grievances involving her employment; and accounts of alleged relationship and cooperation between the City and the Union in personnel matters. Much of this material is simply irrelevant to the issues on appeal, and most of it may be considered of dubious relevance at best. Linstrom's appellate counsel makes little, if any, attempt to relate the evidence to the legal issues by explaining how it could support a finding that the Union entered into a conspiracy with the City to deny Linstrom a promotion. See Fed.R.App.P. 28(a)(4), (b) (appellate briefs shall contain argument stating the contentions of the parties with respect to the issues and the reasons therefor). Our review is further complicated because the trial court did not specify the evidence it relied upon in denying the motions for directed verdict and judgment n.o.v. However, we shall proceed to assay the record for evidence sufficient to support the verdict.
 
 
 10
 Taking the evidence in the light most favorable to Linstrom, and giving her the benefit of all reasonable inferences, we will assume, without deciding, that the record contains substantial support for each of the following facts. The City discriminates (or at least did before Linstrom filed her lawsuit) against women in its personnel policies, and Linstrom's failure to receive a promotion was the result of this discrimination. The City and the Union worked "hand in hand" on personnel matters. Linstrom obliquely contends that the Union did not take adequate steps to end discrimination by the City, even though it knew that the City discriminated on the basis of sex. The Union's top management is composed of men. The Union's president and vice president were given time during work hours for Union activities, and are apparently now paid by the City for work done on behalf of the Union. The Union filed a suit in order to prevent an organization Linstrom helped to establish from representing employees in their grievances with the City. The Union and City ultimately renegotiated their contract so that only individuals or the Union could represent employees.
 
 
 11
 Linstrom was laid off in 1980. She was the only "functional employee" (the parties do not define this term) and the only female affected. At some point, the Union and City renegotiated the contract with the result that Linstrom lost ten years of seniority.[2]
 
 
 12
 Linstrom, who is white, had a relationship with a black man, and bore his son. She took maternity leave, but was denied additional sick leave, which she had requested because of medical complications. She testified that white women with white children were allowed sick leave in conjunction with maternity leave.
 
 
 13
 We agree with the Union that none of this even remotely establishes that the Union harbored any animus toward women or conspired to deny Linstrom a promotion. Even if the Union knew that the City discriminated against women and failed to take appropriate measures, that alone certainly does not establish the existence of an agreement to deny Linstrom a promotion on account of her sex. Mere knowledge of another's wrongdoing is insufficient to hold a party liable as a conspirator. See Ellis v. Kneifl, 834 F.2d 128, 131-32 (8th Cir.1987) (that judge should have noticed that clerk of court had not filed prisoner's notice of appeal was not sufficient ground for inferring that judge and clerk conspired to deny prisoner right to appeal); Rogers v. Rulo, 712 F.2d 363, 366 (8th Cir.) (directed verdict upheld in favor of police chief; no evidence chief caused or consented to alleged misconduct) (citing Taken Alive v. Litzau, 551 F.2d 196, 200 (8th Cir.1977)), cert. denied, 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1983); Lohr v. Ass'n of Catholic Teachers, Local 1776, 416 F.Supp. 619, 622 (E.D.Pa.1976) (employer's enforcement of collective bargaining agreement requiring that nonunion employees submit annual fees to union insufficient to tie employer to alleged conspiracy to make illegal disbursement of collected funds, even if employer knew of illegal activity).
 
 
 14
 Nor are we convinced that the Union's involvement with personnel matters is substantially probative. No evidence exists to show that the City delegated personnel decisions to the Union. See Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30, 489 F.Supp. 282, 294 (N.D.Ca.1980), aff'd, 694 F.2d 531 (9th Cir.1982). Mere communications concerning personnel matters are insufficient to establish an agreement to conspire against an individual employee. Cf. Simpson v. Weeks, 570 F.2d 240, 243 (8th Cir.1978) (meeting at which defendant made statement hostile toward plaintiff not shown to have a relationship to any overt act intended to deprive plaintiff of civil rights). Although taken from another context, the following discussion is instructive:
 
 
 15
 proof that a manufacturer terminated plaintiff's dealership following, or even in response to, complaints by competing dealers, is legally insufficient to support a jury finding of concerted action.... [A] manufacturer and dealer have many legitimate reasons for exchanging information ...; to impose liability [because of such] "highly ambiguous evidence," would deter commercially useful communications.
 
 
 16
 McCabe's Furniture, Inc. v. La-Z-Boy Chair Co., 798 F.2d 323, 327-28 (8th Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 1728, 100 L.Ed.2d 193 (1988). Similar concerns are implicated here.
 
 
 17
 Accordingly, in No. 88-2370 we reverse the district court's denial of the Union's motions for directed verdict and judgment n.o.v. The appeal in the companion case, No. 88-2408, has not been separately briefed so as to require separate discussion, and is dismissed. See 8th Cir.R. 13.
 
 
 
 *
 The Honorable Howard T. Markey, Chief Judge, United States Court of Appeals for the Federal Circuit, sitting by designation
 
 
 [1]
 For the sake of convenience, hereinafter we refer to the Local and Cox collectively as "the Union."
 
 
 [2]
 Linstrom's brief contends that her name came up during these negotiations, but cites as support testimony objected to as hearsay. The objection was sustained, and the jury was instructed not to consider the evidence. We do not consider it either, and view with the strongest disapproval counsel's reliance on the testimony and his failure to disclose that it was the object of a successful objection. However, even if the evidence had been admitted, we would not consider it significantly probative of sex discrimination by the Union, as the precise nature of the comments regarding Linstrom is not revealed