## PULLEN et al. v. DALE.
### No. 9268.

Circuit Court of Appeals, Ninth Circuit.

Feb. 5, 1940.

H. L. Faulkner and N. C. Banfield, both of Juneau, Alaska, for appellants.

Henry Roden and Maurice T. Johnson, both of Juneau, Alaska, for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Judgment was entered in the District Court, First Division, of Alaska in favor of Olaf Dale, plaintiff, against Royal R. and Harriet S. Pullen, defendants. The defendants appeal from this judgment. We shall refer to the parties by their proper names.

It is not disputed that Harriet S. Pullen was running an hotel in and upon property owned by her son, Royal R. Pullen, during all of the times herein referred to, and that an oral contract was entered into by and between her and Olaf Dale in May, 1933. A written memorandum of this contract was made in March, 1935, and is as follows:

"Skagway, Alaska March 1st, 1935.

"I promise to pay to Olaf Dale $90.00 ninety Dollars per month and board.

"And I owe to Olaf Dale $1845.00 One thousand eight hundred and forty five dollars. For Carpenter Labore and painting. Op to March 1st 1935.

"And in case suit or action is instituted to collect this Wages or any portion thereof I Harriet S. Pullen promise and agree to

pay, in addition to the costs and disbursements provided by statute in like United States money for Attorney's fees in said suit or action.

"H. S. Pullen."

Dale entered into the discharge of his duties May 15th, 1933 and continued therein until August 9th, 1938. He did managerial and considerable repair and construction work in and about the premises.

There is evidence, though Royal R. Pullen denies the fact, that Royal R. Pullen who lived in South Dakota was informed by letter sometime in August of 1933 of certain needed repairs and construction to the buildings and that he wrote to his mother telling her to let Olaf Dale do the work and that he would pay for it. That he sent $100 for the purchase of shingles. No letters were introduced in evidence on the subject of the authorization of the employment of Olaf Dale or as to the work to be done by him.

The court, in awarding judgment, based it, in its findings, solely upon the contract above set out and calculated the amount of the judgment upon its terms.

There is no evidence connecting Royal R. Pullen with such contract and no evidence as to the proper compensation for the work done outside of the monthly stipend provided in the said contract. The findings are that " * * * on or about the 15th day of May 1933 Harriet S. Pullen and Royal R. Pullen, the latter acting by his agent, Harriet S. Pullen, contracted with the plaintiff [Olaf Dale]." Even if the trial court believed that Royal R. Pullen wrote to his mother to employ Dale as it is claimed he did, such fact does not in any way connect him with his mother's and Olaf Dale's contract.

The only manner in which such a claimed agency relationship could be justified is through the doctrine of ratification of the May 15th contract by the letter of August, 1933. The testimony is without conflict that Olaf Dale intended to contract solely with Harriet S. Pullen in May of 1933. This is shown by his own testimony:

"Q. Mr. Dale, you said in answer to a question of Mr. Roden a few minutes ago that Mrs. Pullen made this arrangement to pay you $90.00 a month herself? A. Yes.

"Q. It was Mrs. Pullen's contract? A. Yes.

"Q. Between you and her personally? A. Yes.

"Q. Sure of that? A. Yes."

And with reference to the letter claimed by Olaf Dale to have been received by Harriet S. Pullen from her son, Royal R. Pullen, in August or September 1933, it evidences no intent to ratify, even if possible, any past contract entered into between Harriet S. Pullen and Olaf Dale, its context being stated as: "Go ahead and fix the place up * * * have Olaf fix it and I will pay for it."

It is sufficient to say that for the doctrine of ratification to apply, it is a requisite that the act sought to be ratified be done by someone who held himself out to the third party as an agent. Also that the third party must intend to contract with the principal and not the agent. The rule is stated in 2 Am.Jur. p. 177, § 222, as follows: "The doctrine is well recognized that in order that an act or contract may be the subject of ratification, there must be some relationship, actual or assumed, of principal and agent between the person alleged to have made such act or contract his own and the party by whom the contract was entered into or the act performed. * * * there can be no ratification where it appears that the person who performed the act or made the contract was not at the time, and did not profess to be, acting on behalf of the alleged principal."

It therefore follows that agency by ratification is precluded.

It is contended by appellee that the agency relationship is supported by the statement in 3 C.J.S., Agency, 185, § 253: "If the principal consents or authorizes the agent to deal with his property as the owner, then such dealing, although for the agent's sole benefit and to the knowledge of the third party, will bind the principal."

This principle has no application here as it goes on the ground of estoppel, the party making the injury possible being the better one to stand the injury if someone must stand it.

We have considered the contention of appellants as to the divergence of findings from the complaint. That is, that Dale claimed pay only for construction, alteration and repairs, whereas the court based its findings and judgment for services performed as a laborer, handyman and janitor. The difficulty with this claim is that the facts do not support the premise. The complaint alleges, the evidence that was introduced without objection, and the findings are all

539

related to the $90 per month contract. The evidence shows conclusively that for the period claimed Dale did act as handyman and that he did the construction work as found in the findings, which, by the way, does not seem inconsistent with the "handyman's" usefulness. The court committed no error in awarding judgment against Harriet S. Pullen for the amount unpaid upon the contract.

The judgment is affirmed as to Harriet S. Pullen and reversed as to Royal R. Pullen, with costs to him.