Jerry BRUTON, d/b/a Reliable Builders, Appellant,

v.

AUTOMATIC WELDING & SUPPLY CORPORATION and L. David Ekvall, Appellees.

No. 1859.

Supreme Court of Alaska.

Sept. 10, 1973.

———◆———

Helen L. Simpson, Anchorage, for appellant.

Albert Maffei, Anchorage, for appellees.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER, and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

We are here confronted with the question of whether the owner of a tractor or the person using it with his permission is liable to a repair shop for major repairs undertaken at the request of the borrower without prior authorization of the owner.

In the fall of 1969, appellant Jerry Bruton loaned a D8 Caterpillar rent-free to appellee Dr. David Ekvall, who wanted to clear some of his land as a field for horse riding activities. By their informal oral agreement, Ekvall was to provide an operator, pay for the fuel consumed and perform routine maintenance. Nothing was said about major repairs or overhauls.

Bruton delivered the Cat to Ekvall's property where it was driven by one or more operators under the direction of Mike Fontana, Ekvall's foreman. Problems developed which required repairs. The Cat kept slipping out of gear, cables broke, and there was damage to the radiator. Ekvall called Appellee Automatic Welding & Supply [hereinafter AWS], which did maintenance and repair work. At first AWS sent men out to the Ekvall site to make field repairs; but those proved only temporarily effective. During the period in which field repairs were attempted, several conversations ensued between Emmett Roetman, owner and manager of AWS, and Ekvall, and between Roetman and Fontana, in which the possibility of a major repair was discussed.

Thereafter on authorization by Ekvall AWS removed the machine to its shop where extensive repairs were undertaken, valued at $2340.89. While the Cat was there, Bruton entered the shop on other business, recognized his Cat and authorized some additional work to be done on it, at a cost of $387.80. At the time of Bruton's visit to the shop, the major repairs authorized by Ekvall were either completed or nearly completed; Bruton learned from Ed Dow, an AWS mechanic, of the scope of the major repairs but their cost was not discussed.

When the repairs were completed, the Cat was returned to Ekvall's property and used for some time thereafter. AWS billed Bruton for all the repairs, including those authorized specifically by Bruton while in the AWS shop, those made in the field on Bruton's Cat and authorized by Ekvall, some other repairs wholly unrelated to Bruton's Cat which Ekvall had authorized on a different Cat, and the major repairs which had been performed in the AWS shop. Ekvall was sent copies of the bill.

Unable to get any portion of the bill paid, AWS brought suit against both Bruton and Ekvall in District Court. Bruton contended that Ekvall was liable and cross-claimed against him for the cost of the repairs during the period that he had used the Cat, and for damage to the Cat that Bruton claimed was the result of Ekvall's negligence. The District Court held that Ekvall was severally liable to AWS for $757.90 plus interest, which represented the field repairs specifically authorized by Ekvall prior to the major repair, and the cost of the repairs which were unrelated to

Bruton's Cat. Bruton was found severally liable for the $387.80 plus interest. Each was held jointly and severally liable for the major repairs, with Ekvall to have judgment against Bruton for any part of the joint and several liability which Ekvall would be compelled to pay. Attorney's fees were awarded to AWS on the principal suit and to Ekvall on the crossclaim. Bruton was to pay Ekvall for any part of the attorney's fees assessed against them jointly which Ekvall might be compelled to pay. On appeal to the Superior Court, the judgment was affirmed, and Bruton has appealed from that affirmance.

Because at oral argument Bruton's counsel conceded liability to AWS for the $387.80 which he specifically authorized, we need focus only on the District Court's findings that Bruton is jointly and severally liable with Ekvall to AWS for the major repairs, and that he is liable to Ekvall for any part of the major repair bill that Ekvall might be required to pay.

The District Court based its judgment against Bruton on three theories, each of which is argued by Ekvall as sufficient to justify Bruton's liability: (1) Ekvall had apparent authority to order major repairs for Bruton to the Cat; (2) Bruton ratified Ekvall's actions when he went to the AWS shop; and (3) Bruton rather than Ekvall should be ultimately liable for the repairs, as otherwise he would be unjustly enriched.

## APPARENT AUTHORITY

The District Court listed as a finding of fact: "The court specifically finds that Ekvall had apparent authority to order major repairs to the D–8." We must thus ascertain whether such ultimate finding was clearly erroneous.[1]

■ Initially it is important to recognize the distinction in agency law between "authority" and "apparent authority":

[A]uthority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the *agent* to believe that the principal desires him so to act on the principal's account. Restatement (Second) of Agency § 26 (1958) (emphasis added).

Apparent authority on the other hand involves a representation by the principal either by words or conduct to *a third person,* "which reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."[2]

The distinction between "apparent authority" and "authority" is discussed in Perkins v. Willacy, 431 P.2d 141 (Alaska 1967). In that case a wife signed a real estate listing agreement. The agreement was not signed by the husband, but the wife advised the real estate agent that the husband agreed to its terms. In the opinion we stated:

Apparent authority is created by the same method as that which creates authority, except that the *manifestation of the principal is to the third person rather than to the agent.*[3]

We found no words or conduct manifested by the husband to the real estate agent jus-

1. Alaska Rule of Civil Procedure 52(a) provides in part:
 Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witness.
 Counsel for Bruton contends that the finding of apparent authority was a conclusion of law and that we therefore need not be restricted by the "clearly erroneous" standard of Rule 52(a). However, as in Perkins v. Willacy, 431 P.2d 141 (Alaska 1967), we will apply the clearly erroneous test because

whether or not apparent authority existed is essentially a question of fact. The same standard is applied by federal courts in situations involving apparent authority under the analogous Fed.R.Civ.P. 52(a). Bogue Electric Mfg. Co. v. Coconut Grove Bank, 269 F.2d 1 (5th Cir. 1959); Lee v. Jenkins Brothers, 268 F.2d 357, 370 (2d Cir. 1959).

2. Restatement (Second) of Agency § 27 (1958).

3. 431 P.2d at 143. (quoting from the Restatement (Second) of Agency § 27, comment *a* (1958).

tifying a finding of apparent authority in *Perkins.*

Similarly, here there were no words or conduct of Bruton which could have caused AWS to believe that Bruton consented to have the repairs made on his behalf. There was no testimony to the effect that Bruton made any representation to AWS that Ekvall was authorized to order repairs on his behalf. The mere fact that Bruton permitted Ekvall to use the Cat did not constitute any representation to AWS that Ekvall was authorized to make repairs to it on Bruton's behalf.

 The district court decided the case on an agency theory. But "an agency relation exists only if there has been a manifestation of the principal to the agent that the agent may act on his account and consent by the agent so to act."[4] Bruton never indicated to Ekvall that he had authority to act on his behalf. The mere loan of the Cat certainly did not constitute any such manifestation. Instead, the gratuitous loan constituted a bailment as that relationship was defined in Maulding v. United States, 17 Alaska 592, 599–600, 257 F.2d 56, 60 (9th Cir. 1958):

> A relationship of bailor-bailee arises when the owner, while retaining general title, delivers personal property to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled . . . .

Here the D–8 Cat was delivered to Ekvall with an implied promise from him to return it to Bruton when the work on Ekvall's land was completed. While the rela-

tions of bailment and agency are not mutually exclusive, the ordinary bailment does not involve authorization from the bailor for the bailee to act for him in such a way that an agency may be inferred. The crucial distinction between the two relations for our purposes is that "a bailee has, *as such,* no power to subject the bailor to liability in contract or tort." (Emphasis supplied.)[5] We find no element of an agency relationship in the bailment entered into by the parties.

 Appellant also contends that when Bruton entered the AWS shop and authorized the additional repairs, the discussion Bruton had regarding the nature of the repairs which Ekvall had authorized constituted reason for AWS to believe that Ekvall had apparent authority to contract for Bruton. But by the time Bruton went to the AWS shop most, if not all, of the major repairs were completed. After the fact manifestations of a principal to a third person, though they might constitute ratification, are not evidence that a purported agent has apparent authority.[6]

To conclude from the record that Ekvall had apparent authority was clearly erroneous.[7]

## RATIFICATION

The District Court found that at the time Bruton went into the AWS shop and specifically authorized further minor repairs to the Cat, his "assent and/or lack of protest . . . constituted ratification of Ekvall's actions."

 As with apparent authority, ratification is an agency doctrine. It was cre-

---

4. Restatement (Second) of Agency § 15 (1958).

5. Restatement (Second) of Agency § 12, comment *c* (1958); National Farmer's Union Property & Casualty Company v. General Guaranty Ins. Co., 150 Mont. 297, 434 P.2d 708, 711 (1967); Young v. Lamson, 121 Vt. 474, 160 A.2d 873 (1960); *see* Lionberger v. United States, 371 F.2d 831, 178 Ct.Cl. 151 (1967); Walker Hall, Inc. v. Fincher, 120 Ga.App. 193, 169 S.E.2d 745, 748 (1969); English v. Dhane, 156 Tex. 231, 294 S.W.2d 709 (1956).

6. No claim is made that Bruton had ever previously paid bills that Ekvall had authorized; such actions might have given rise to authority or apparent authority by earlier acquiescence.

7. We have said previously that, "[a]s a general rule, the party who seeks to bind a principal with acts of a purported agent bears the burden of proving the fact of agency." State v. Neal & Sons, Inc., 489 P.2d 1016, 1019 (Alaska 1971).

ated by common law courts to deal with a situation where, *after* a transaction is entered into by a second party purporting to act for a principal, the principal manifests an intent to be bound by the acts of the second party.[8] Thus ratification is unnecessary where a person acts with a principal's authority or apparent authority; in those situations the third party has reason to believe, by communication *prior* to the transaction either from the principal directly or through another, that the principal is liable.

■ But ratification was wrongly applied in the instant case. As stated in Pullen v. Dale, 9 Alaska 643, 646, 109 F.2d 538, 539 (9th Cir. 1940), "It is sufficient to say that for the doctrine of ratification to apply, it is a requisite that the act sought to be ratified be done by someone who held himself out to the third party as an agent." [9]

No evidence was presented below that Ekvall purported to be acting for Bruton when he authorized the Cat to be brought into the AWS shop. In fact the testimony of Roetman indicated that Ekvall, who up until that time had explicitly authorized all repair bills for the D8 Cat, had the major repairs done on his own account. Roetman testified:

> I explained to him what we were trying to do, and that in the event this didn't work, it would then become a major repair job, and have to go to the shop, and he said well, we don't want to put any more money into it, in so many words anyway, that any more money in it than we have to, but we've got to repair it, so do whatever you see fit . . . .

Ekvall testified that he did not remember authorizing major repairs to the best

of his knowledge; but he did not testify at all about representing himself to Roetman as Bruton's agent. In short, our search of the transcript reveals no evidence that Ekvall was purporting to act for Bruton in authorizing the repairs. Absent Ekvall giving Roetman a reasonable basis for assuming that Bruton would be paying the bill, no subsequent ratification is possible.

■ But even if Ekvall had purported to act for Bruton in authorizing the major repairs, there was no ratification for yet another reason. Neither through conduct nor speech did Bruton affirm any responsibility to pay for repairs authorized by Ekvall. Affirmance is defined in the Restatement (Second) of Agency § 83 as:

> (a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or
>
> (b) conduct by him justifiable only if there were such an election.

Though there is no evidence of an express election by Bruton to pay for the major repairs, appellee argues that a finding of implied affirmance may be justified because Bruton, upon finding that major repairs were being done to his Cat, did not question Dow or Roetman about the cost or his liability. Appellee also argues that by receiving or by retaining the benefit of the work done on the Cat without protest, Bruton impliedly affirmed his liability for the repairs.

■ But none of these theories will justify a finding of affirmance. A failure to act may of course constitute an affirmance if, "according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent. . . ." Restatement (Second) of

8. Restatement (Second) of Agency § 82 provides:
§ 82 Ratification
Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.

9. To the same effect is the Restatement (Second) of Agency § 85(1) (1958):
*Purporting to Act as Agent as a Requisite for Ratification*
(1) Ratification does not result from the affirmance of a transaction with a third person unless the one acting purported to be acting for the ratifier.

Agency § 94, comment a; *see* Seavey, Ratification by Silence, 103 U.Pa.L.Rev. 30 (1954). Bruton could be deemed to have elected to pay for the major repairs only if, based on what he knew, he should have denied liability.

But up until the time that Bruton went into the AWS shop, Ekvall had completely authorized all the repairs on the Cat. The evidence shows that Bruton received no notification from Ekvall that the major repairs were to be made. Bruton testified that he never discussed with Roetman the cost of the repairs authorized by Ekvall:

> I wasn't even concerned with it and didn't see any need to even discuss the terms that had been made or the cost of the repair at all. I assumed as I thought that Mr. Roetman did, that Dr. Ekvall would be taking care of the repairs on it.

We think it was reasonable for Bruton to assume that Ekvall would pay for the repairs which were nearly complete when Bruton came into the AWS shop. Only if Roetman could reasonably assume from Bruton's silence that Bruton agreed to pay for the repairs would his silence serve as affirmance. Here no facts giving rise to a duty on Bruton's part to discuss liability or cost were ever communicated to him.

■ Receipt of benefits and retention of benefits were also inappropriately applied. Both rest on the notion that the acquiescence of the principal through acceptance of the benefits of an unauthorized transaction may reasonably be assumed to be authorization. But Bruton never realized that he was considered responsible for the cost of repairs until after he received the bill from AWS. After the major repair, the Cat was returned to Ekvall, who continued to use it for some length of time. When it was finally returned to Bruton there was no way for him to have the repairs undone.

## UNJUST ENRICHMENT

■ The trial court found unjust enrichment to be a third legal theory on which Bruton could be held liable to Ekvall for whatever portion of the joint and several damages that Ekvall might be required to pay AWS. But Ekvall never filed a cross-claim against Bruton, and the record does not indicate that the issue was tried with the consent of the parties. Accordingly, we need not entertain an opinion on the merits of a recovery by Ekvall against Bruton based on unjust enrichment.[10] It was error for the trial court to consider it.

Finally, appellant has also raised points of error relating to attorney's fees and the interest charged by AWS. Because we reverse on the issue of Bruton's liability, we do not reach these issues. We hold that Bruton is neither jointly nor severally liable to AWS for the cost of the major repairs. We affirm Bruton's several liability for the cost of the repairs that he authorized specifically in the AWS shop.

Reversed in part.

10. Even if unjust enrichment had been pleaded however, any recovery thereon would have been questionable. Although Ekvall had ample opportunity, Bruton was never notified that major repairs to the Cat were necessary. *See generally* Restatement of Restitution §§ 2, 112 (1937). Additionally, the testimony indicated that Ekvall used the Cat for approximately 100 hours work, and that the rental value of such equipment was $35 an hour, so that the value of the Cat utilized by Ekvall rent-free was approximately $3500.