S & B MINING COMPANY, a Washington limited partnership, William M. Swayne II, individually and as a general partner, Kay Baird, individually and as a general partner, Rodney Williams, individually and as a general partner, Baird & Williams Investment Advisors, Inc., a general partner, jointly and severally, and Chena Mining, Appellants,

v.

NORTHERN COMMERCIAL COMPANY d/b/a NC Machinery Company, Appellee.

No. S–2990.

Supreme Court of Alaska.

June 7, 1991.

Michael W. Dundy and Douglas C. Perkins, Hartig, Rhodes, Norman, Mahoney & Edwards, Anchorage, for appellants.

Matthew G. Reynolds, Hughes, Thorsness, Gantz, Powell & Brudin, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The central issue in this appeal is whether the superior court erred in granting summary judgment in favor of Northern Commercial Company against S & B Mining Company and William M. Swayne II.

## I. FACTS AND PROCEEDINGS

In July of 1980, Baird & Williams Investment Advisors, Inc. ("B & W") and William Swayne II, as general partners, formed S & B Mining Company ("S & B") to conduct gold mining operations in Alaska. B & W is a Texas corporation whose principals were Kay Baird and Rodney Williams.

On February 20, 1981, S & B leased five Caterpillar tractors from Northern Commercial Company ("Northern Commercial"). Swayne signed a personal guaranty for the debt created by the lease. The lease included a purchase option. In November 1981, Northern Commercial repossessed the equipment after S & B had failed to make its monthly rental payments, being in arrears some $330,358.

In January 1984, Northern Commercial filed a suit against S & B, Swayne, and B & W. In February 1984, Williams negotiated a settlement with Northern Commercial, whereby Northern Commercial voluntarily dismissed the suit in exchange for a promissory note and a security agreement. The promissory note stated that "S & B Mining Company ('Maker'), hereby promises to pay to the order of N C Machinery Co. ... $220,000." The note was signed by Williams, who wrote "Baird + Williams Investment Advisors, Inc." above his signature. Additionally, Williams signed a security agreement, pledging a Reverse Helix Gold Concentrator as collateral for the debt evidenced by the promissory note. Williams also signed guaranties on behalf of B & W and Chena Mining.[1]

The promissory note called for three annual payments of $75,500, commencing on November 15, 1984. Chena Mining made the first payment. S & B did not make any of the subsequent payments.

On October 8, 1986, Northern Commercial filed suit again against S & B, Swayne, Baird, Williams, B & W, and Chena Mining. This suit was based on the 1984 promissory note, not the 1981 lease of the five Caterpillar tractors. Subsequently, on November 14, 1986, Swayne wrote to Northern Commercial requesting a six month extension of the debt in exchange for additional collateral. Thereafter, the defendants counterclaimed for breach of contract, breach of implied warranties, and misrepresentation.

Northern Commercial moved for summary judgment against all defendants. Northern Commercial argued that there was no issue of material fact over whether the 1984 promissory note executed by Williams bound all parties and established their indebtedness to Northern Commercial.

In opposition, S & B argued that the original 1981 leases controlled and that there were material issues of fact surrounding those leases. Moreover, S & B contended that, according to Rodney Williams' understanding, the Reverse Helix Gold Concentrator collateral was to be sold before any action was to be commenced on the 1984 note. Finally, S & B claimed that B & W alone was bound by the promissory note, arguing that only the party whose signature is on the 1984 promissory note is bound by that document.

---

**1.** Chena Mining, a joint venture, apparently is no longer in business.

Northern Commercial's reply was two-fold. First, it contends that the 1984 promissory note constituted an accord, thereby superseding the lease agreements. Second, it argues that under the principles of agency, all named defendants were bound by Williams' signature on the 1984 promissory note. Additionally, Northern Commercial argued that the parol evidence rule barred any evidence as to Williams' belief that the collateral was to be sold prior to the commencement of any suit on the 1984 promissory note.

The superior court held a hearing on the motion for summary judgment and concluded that the promissory note constituted an accord. However, at that time, S & B introduced a different version of the S & B partnership agreement, which it claimed superseded the original agreement. S & B contended that this amended agreement was the "operative agreement that would affect this transaction."[2] Under this agreement, "all actions of the general partner in behalf of the partnership require the consent of both general partners." Therefore, S & B argued that only B & W was bound by the promissory note because only Williams, on behalf of B & W, had signed it.

The superior court sanctioned S & B for its failure to disclose the amended agreement earlier, and allowed additional time for Northern Commercial to reply. The court also granted summary judgment against B & W, and ruled that the 1984 promissory note did not require prior sale of the security before action on the note could be instituted.

Northern Commercial submitted a second reply brief. Northern Commercial advised the court that it had turned up yet another amended partnership agreement of S & B ("1984 Agreement"). This agreement was dated January 1, 1984, and in Northern Commercial's view it was controlling. Under the 1984 Agreement, the partners of S & B agreed that Baird and Williams would have powers of attorney, and that they were "empowered to act alone ... [for the] purpose of this Agreement and for carrying out the business of the Partnership." While Baird did not sign the 1984 Agreement until January 22, 1985, it was dated and signed by Swayne on January 1, 1984. Northern Commercial argued that Williams' signature on the February 1984 promissory note bound Swayne because (1) the 1984 Agreement was effective on January 1, 1984, (2) Swayne had appointed Williams as his attorney in fact, and (3) Swayne had ratified the agreement. The superior court then granted summary judgment against S & B, Swayne, and B & W.[3]

In this appeal, S & B and Swayne advance four issues:

1. Whether the superior court erred in granting Northern Commercial's motion for summary judgment dated January 6, 1988?

2. Whether the superior court erred in entering a Civil Rule 54(b) judgment against S & B and its general partners?

3. Whether the superior court erred in barring evidence that S & B was entitled to offset the value of mining equipment against debts claimed by Northern Commercial?

4. Whether the superior court erred in finding there was an accord which precluded consideration of the nature and effect of the underlying 1981 lease agreement?

---

**2.** This version of the agreement was signed by Swayne in December 1981, and by Baird in January 1983. The parties refer to this agreement as the "1981 Agreement."

**3.** In an addendum to the order, however, the superior court did note that in light of *Lundgren v. National Bank of Alaska*, 742 P.2d 227 (Alaska 1987), it was not ordering judgment against Swayne on the basis of his 1981 guaranty of the lease agreements. Nevertheless, the court held that summary judgment "is still viable based on Swayne's participation as a partner in S & B."

In August 1988, the superior court entered a Civil Rule 54(b) judgment against S & B, Swayne, and B & W. At that time, the court understood that the action against the remaining defendants, Williams and Chena Mining, had been dismissed. The action against these remaining defendants was later reinstated.

## II. DISCUSSION [4]

The controlling issue in this case is whether Williams' execution of the 1984 promissory note bound S & B and hence, its partners, Swayne and B & W.

There is no dispute between the parties as to the applicable law. In accordance with the principles of partnership law, it is agreed that a partnership is bound by the assent of one partner to business conducted in the partnership name, unless the partner had no authority "to act for the partnership in the particular matter, and the person with whom the partner is dealing has knowledge of the fact that the partner has no such authority." AS 32.05.040(a).[5]

A. *Did the superior court err in granting summary judgment?*

1. *Did Swayne ratify the 1984 promissory note, thereby binding himself and the S & B partnership under the note?*

 Northern Commercial argues that Swayne and S & B are liable for the note because it was ratified by the non-signing partner, Swayne. Northern Commercial cites the following facts in support of its theory of ratification: (i) Swayne impliedly ratified the promissory note by acquiescing to it, and the payment under it, without objection; and (ii) Swayne expressly admitted his obligation under the note by writing to Northern Commercial requesting an extension of the debt under the note.

Alaska recognizes the common law doctrine of ratification. *See Sea Lion Corp. v. Air Logistics of Alaska,* 787 P.2d 109, 116–18 (Alaska 1990); *Bruton v. Automatic Welding & Supply Corp.,* 513 P.2d 1122,

1126 (Alaska 1973). As this court said in *Sea Lion,*

> Ratification is an agency doctrine ... where, after a transaction is entered into by a second party purporting to act for a principal, the principal manifests an intent to be bound by the acts of the second party. *Bruton,* 513 P.2d at 1127. The focus is on what occurred subsequent to the agent's act; the scope of the agent's authority becomes irrelevant.

787 P.2d at 116–17.

There are two requirements for ratification by silence. First, "the act sought to be ratified ... must be done by someone who held himself out to the third party as an agent for the principal." *Id.* (citing *Bruton,* 513 P.2d at 1127). After the promissory note was executed by Williams, Northern Commercial dropped its suit against S & B. Here, it is apparent that Williams signed the promissory note as an agent for S & B.

The second requirement for ratification by silence is that "the principal must then have failed to act in response under circumstances which 'according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent.'" *Id.* (citing *Bruton,* 513 P.2d at 1127, *quoting* Restatement (Second) of Agency § 94, comment a (1957)). While normally such acquiescence is a question of fact, "silence of the principal effects ratification as a matter of law if the 'case is so clear that reasonable men could come to but one conclusion.'" *Id.* at 118 (quoting *Bruton,* 513 P.2d at 1127).

---

**4.** The standard of review for summary judgment is to determine whether the moving party is entitled to judgment on the law applicable to the established facts. *Reed v. Municipality of Anchorage,* 741 P.2d 1181, 1184 (Alaska 1987) (citing *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985)). This court reviews questions of law *de novo. Alaska Sales & Serv., Inc. v. Millet,* 735 P.2d 743, 745 (Alaska 1987). Similarly, the superior court's holding regarding the applicability of the parol evidence rule, and its ruling that the promissory note was an accord were both questions of law, and hence subject to independent review.

S & B also seeks review of the superior court's entry of final judgment pursuant to Alaska Rule of Civil Procedure 54(b). The appropriate standard of review as to this question is whether the superior court abused its discretion. *See Johnson v. State,* 577 P.2d 706, 707 (Alaska 1978).

**5.** Additionally, individual partners are bound as agents of the partnership. AS 32.05.040(a); AS 32.05.100(2). Moreover, "[e]xcept as otherwise established, the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity." AS 45.03.403(c).

S & B argues that a factual dispute exists as to whether Swayne had sufficient knowledge of all material facts to ratify the note by silence. Specifically, S & B notes that Swayne did not participate in making the note and did not issue or sign the first payment under the note, which was issued by Chena Mining, and signed by David Mitchell.

Yet, on November 14, 1986, one day before the final payment under the note was due, Swayne wrote to Northern Commercial, on behalf of S & B, requesting a six-month extension of "our debt." Thus, Swayne must have had notice that the original lawsuit against him and S & B had been dropped, and he clearly had knowledge of the debt. Moreover, Swayne's affidavit in the superior court expressly acknowledges Northern Commercial's right to the Helix Gold Concentrator, a right created solely by the security agreement accompanying the promissory note.

On the basis of the foregoing, we hold that there was no genuine issue of material fact concerning the ratification. The record demonstrates that Swayne ratified the 1984 promissory note, thereby binding himself and S & B under the note.

2. *Does the 1984 Agreement bind S & B and Swayne to the 1984 promissory note executed by Williams?*

We further uphold summary judgment against S & B and Swayne because the promissory note was binding. The 1984 Agreement was dated January 1, 1984. It specified that Williams could bind the partnership. Williams signed the promissory note on February 1, 1984. Therefore, Northern Commercial concludes that, under the principles of partnership law, both S & B and Swayne, individually, were bound by the promissory note.

S & B argues that the 1984 Agreement was not effective when Williams signed the promissory note because, at that time, only Swayne had signed the 1984 Agreement. Northern Commercial claims that Baird's signature in 1985 gave the 1984 Agreement retroactive effect, and thereby validated any documents signed by Williams in the interim.[6]

S & B does not cite any cases holding that the operative date of a contract is the date it is signed. It is undisputed that the parties may agree to give retroactive effect to their contracts. The question is whether there is sufficient evidence of their intent to do so for purpose of summary judgment.[7] Here, Baird signed a document which was predated. She did not make any "effective as of this date" notation on the document, nor did she write the date of signing next to her name. There is no evidence that Baird did not intend to give the document retroactive effect. Therefore, we conclude that the 1984 Agreement was, as a matter of law, the operative agreement as of January 1, 1984.

S & B further argues that, even if the 1984 Agreement is the operative agreement, there exists a material question of fact as to whether the 1984 Agreement requires the signature of both general partners to bind the partnership. Northern Commercial considers this argument con-

---

6. In support, Northern Commercial cites *Mutual Life Ins. Co. of N.Y. v. Hurni Packing Co.,* 263 U.S. 167, 175–76, 44 S.Ct. 90, 91, 68 L.Ed. 235 (1923) ("it was competent for the parties to agree that the effective date of the policy should be one prior to its actual execution or issue"); *Brewer v. National Surety Corp.,* 169 F.2d 926, 928 (10th Cir.1948) ("parties [may] agree that a written contract shall take effect as of a date earlier than that on which it was executed, and when this is done, the parties will be bound by such agreement"); *American Cyanamid Co. v. Ring,* 248 Ga. 673, 286 S.E.2d 1 (1982) (date contract was signed was date of execution; effective date was retroactive date contained in body of contract); and *Matthews v. Jeremiah Burns, Inc.,* 205 Misc. 1006, 129 N.Y.S.2d 841

(Sup.Ct.1954) (contract signed three years after effective date given retroactive effect when parties specified that contract was "as of" the effective date).

7. Contract interpretation is a question of law. *See Ursin Seafoods v. Keener Packing Co., Inc.,* 741 P.2d 1175, 1178 (Alaska 1987). When interpreting a contract, the court begins with the documents, and then considers case law interpreting similar provisions, and relevant extrinsic evidence, such as the subsequent conduct of the parties. *Fairbanks North Star Borough v. Tundra Tours, Inc.,* 719 P.2d 1020, 1024 (Alaska 1986).

trolled by the parol evidence rule, and by S & B's failure to advance it in the superior court.

Before Swayne signed the 1984 Agreement, he conditioned his signature upon the "attached rivisions" [sic]. The copy of the 1984 Agreement filed with the superior court, and apparently obtained by Northern Commercial from the State of Washington, had no attachments other than an exhibit incorporating the limited partners, and a map showing the location of the mining claim. In its original brief before this court, S & B presented evidence that the revisions in question would have required the signatures of both general partners to bind the partnership. Because of the unusual manner in which the 1984 Agreement came to the attention of the superior court, S & B never had the opportunity to argue the effect of the revisions to that court. However, because this evidence was not in the record on appeal, we ordered this material struck from S & B's appellate brief. S & B, nevertheless, argues that the conditioning language written by Swayne should have placed the superior court on notice that there was a material issue of fact which precluded summary judgment.

We think it significant that the handwritten language added by Swayne did not refer to any specific provision of the contract. When S & B failed to submit any evidence to the contrary, the superior court simply was not on notice that there could be a material issue of fact regarding the authority of the general partners under the 1984 Agreement. Based on this record, we conclude that the binding effect of the 1984 Agreement provides an alternative basis for holding that the superior court did not err in granting Northern Commercial's motion for summary judgment.

B. *Did The Superior Court Err In Granting Final Judgment Against S & B and Swayne When The Action Against Williams And Chena Mining Was Still Pending?*

█ Civil Rule 54(b) allows entry of final judgment against one or more but fewer than all of the claims and parties in litigation involving multiple parties or multiple claims upon an express determination that there is no just reason for delay. Entry of 54(b) judgment is discretionary; however, the policy against piecemeal litigation is very strong, and "there must be a good reason for using 54(b)." *Johnson v. State,* 577 P.2d 706, 710 (Alaska 1978).

Here, at the time the superior court made its entry of Rule 54(b) judgment, the action had not been terminated as against Williams, individually, or Chena Mining. However, the issues of accord and liability under the promissory note had been decided. Two issues still remained to be determined by the superior court. The first issue was whether Northern Commercial would be able to pierce the corporate entity of B & W to establish the individual liability of Williams. The second issue required the superior court to determine exactly what type of entity Chena Mining was, and whether it could be held liable under the promissory note or its guaranty. Because Williams and Chena Mining were parties to the entire action, they were not in a position to relitigate the issues previously decided on summary judgment. Thus, there was no just reason to delay the entry of final judgment against those parties whose interests were no longer being litigated in the action.

Moreover, it was apparent that delay would work a hardship on Northern Commercial. S & B had failed to pay its bills for a protracted period of time, and there was cause to doubt its solvency. Therefore, we hold that the superior court did not abuse its discretion in entering a final judgment against S & B and Swayne pursuant to Rule 54(b).

C. *Did The Superior Court Err In Applying The Parol Evidence Rule To Exclude Evidence That The Promissory Note Would Not Be Sued Upon Until The Collateral Had Been Sold?*

█ S & B argues that, at the time the promissory note was signed, Northern Commercial promised Williams that it would sell the collateral before suing on

the note, and that Northern Commercial's promise became part of the contract between the parties. In addition, S & B argues that evidence of this promise is not banned by the parol evidence rule because the rule only bars contradictory evidence.

It is presumed that a creditor may proceed on the note without first foreclosing on the collateral, unless the note states otherwise. *See Moening v. Alaska Mutual Bank,* 751 P.2d 5, 9 (Alaska 1988); *Native Alaskan Reclamation and Pest Control, Inc. v. United Bank Alaska,* 685 P.2d 1211, 1224 (Alaska 1984). Moreover, here the promissory note, as written, would allow Northern Commercial to abandon the collateral without affecting its rights. It is apparent that Williams' evidence does contradict the terms of the note, and, therefore, is barred by the parol evidence rule if the promissory note represents an integrated contract. *See Lower Kuskokwim School Dist. v. Alaska Diversified Contractors, Inc.,* 734 P.2d 62 (Alaska 1987).

The superior court did not make a specific finding as to whether the note was an integrated contract. A contract is integrated if it is intended by the parties to be a final expression of some or all of the terms of their agreement. *Id.* at 63. In view of its completeness and specificity, we hold that the promissory note was an integrated contract, and thus that S & B's contradiction is inadmissible evidence.

In short, we conclude that the instant case is directly controlled by *Moening,* 751 P.2d at 8–9. In *Moening,* the debtor also alleged that the creditor had agreed to exhaust the security before suing on the note. *Id.* at 7. There, as here, no provision to that effect was incorporated into the note. The debt was evidenced by a promissory note "in which Moening expressly promised to pay principal and interest. In case of default, Moening agreed to pay AMB's collection costs and attorney's fees. It does not limit AMB's ability to sue Moening." *Id.* at 9. S & B's promissory note contains identical provisions.[8]

**8.** Our disposition of the issues addressed makes it unnecessary to decide any other issue in this appeal.

The superior court's judgment is AFFIRMED.