Seth HARRIS and Walter Moore, Appellants and Cross–Appellees,

v.

Robert KEYS and Barbara Meyers, d/b/a Homer Cabins, and Bobbie Satterwhite, Appellees and Cross–Appellants.

Nos. S–7105, S–7126.

Supreme Court of Alaska.

Nov. 14, 1997.

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Appellants/Cross–Appellees.

Frank S. Koziol, Law Office of Frank S. Koziol, Anchorage, for Appellees/Cross–Appellants Robert Keys and Barbara Meyers, d/b/a Homer Cabins.

No appearance by Appellee Bobbie Satterwhite.

Before COMPTON, C.J., and MATTHEWS, FABE and BRYNER, JJ.

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

Seth Harris and Walter Moore appeal from a judgment of the superior court, entered on a jury verdict, dismissing their suit against Robert Keys for injuries which Harris sustained in the winter of 1992. Keys cross-appeals. We affirm.

### II. FACTS AND PROCEEDINGS

In August 1992, Robert Keys and Barbara Meyers, d/b/a Homer Cabins (Keys), con-

tracted to remove discarded wood from a site they leased near Ninilchik, Alaska. After a log splitter was stolen from the site, Keys parked at the site a motor home he owned, and asked Bobbie Satterwhite to stay there to discourage further theft.[1] Satterwhite agreed to live in the motor home, and moved in with his friend Elizabeth. The parties dispute whether Satterwhite had any duties beyond living in the motor home at the site,[2] as well as Satterwhite's compensation for such duties.[3] The motor home had a built-in furnace and two portable heaters. All three were missing or destroyed by December, although Keys testified that he was never told the furnace was inoperable. Satterwhite heated the motor home with a propane stove, which vented carbon monoxide into the motor home.

In November, Satterwhite left the site and did not return for a month. Keys believed that Satterwhite had abandoned the site, thereby terminating the arrangement. Satterwhite returned to the site in mid-December, accompanied by Elizabeth and Seth Harris.[4] When Keys discovered them at the site on December 16, Keys allegedly told them to leave. They did not do so. Satterwhite denies he was told to leave.

Keys visited the site several times from December 16 to December 24. The parties dispute exactly what happened during that period, and which days Keys visited the site. However, it is clear that Keys found Harris and Satterwhite at the site during several visits, and believed that they were or had been drinking. On one occasion, Keys had to help Satterwhite dress himself.[5] Keys also observed that the motor home was disorderly, and that the propane stove was being used without ventilation. Nevertheless, Satterwhite told Keys that everything was "going pretty good." Keys did not believe that Harris and Satterwhite were in any danger, because they had ample fuel and food and the motor home was warm.

Keys visited Harris's grandfather, Walter Moore, following several of his trips to the site, and informed Moore of his observations. On December 24, Moore asked Keys to drive him to the site, or to lend him the key to a gate which barred access to the site. Keys refused to do so.[6]

On December 25, Harris and Satterwhite visited a nearby bar. Harris displayed signs of frostbite. Later that day, Keys received a call stating that Elizabeth was dead or seriously ill. Keys and Moore accompanied paramedics and police to the motor home. At the site, they found Elizabeth dead from an infection, and Harris frost-bitten and incoherent. Tests revealed high levels of carbon monoxide in Harris, but negligible levels in Elizabeth. Harris lost both feet to frostbite and suffered neural damage from shock.

Harris and Moore brought suit against Keys. Prior to trial, Harris and Moore attempted to shift the burden of proof regarding Satterwhite's negligence as a cause of injury, on the ground that Keys had cleaned the motor home and destroyed evidence relevant to that issue. The superior court denied this motion. In addition, the court refused to admit Elizabeth's diaries, which contained records of Satterwhite's work. The court also refused to allow late addition

---

1. Satterwhite had worked for Keys at other sites, in exchange for bartered items and small amounts of cash.

2. Keys claims that Satterwhite did no other work for him, but was allowed to cut wood for his own benefit. Satterwhite contends that he also cut wood for Keys.

3. Keys claims that Satterwhite received only the right to live in the motor home and cut wood for his own benefit. Satterwhite contends that Keys compensated him with groceries, cigarettes, and beer, plus a finishing bonus of $500. Keys did carry worker's compensation insurance for work done at the site, and set up a joint checking account with Satterwhite.

4. After Satterwhite returned to the site, Harris began to haul wood from the site. The parties dispute whether Harris did so with Keys's permission, although Keys admits paying Harris for transporting several loads of wood without first obtaining Keys's permission.

5. On this visit, Keys also found the motor home door fused shut with frozen urine, and Harris asleep on the floor amidst piles of refuse.

6. Keys claims that under the terms of his lease, he was forbidden to give the key to the site to anyone else.

of several witnesses, or to admit their hearsay testimony.

Following trial, the jury found that Satterwhite was negligent, and that his negligence was a cause of harm to Harris. The jury found that Keys was not negligent, and that Satterwhite was not his agent. The court denied a motion for judgment notwithstanding the verdict. Harris and Moore appeal; Keys cross-appeals.

### III. DISCUSSION

#### A. The Superior Court Properly Refused to Disturb the Jury's Resolution of the Agency Issue.

■ Harris and Moore first challenge the jury's conclusion that Satterwhite was not an agent of Keys. "This court's role in reviewing a grant of a motion for a directed verdict or JNOV is not to weigh conflicting evidence or judge the credibility of witnesses, but rather to determine whether [the] evidence, when viewed in [the] light most favorable to the non-moving party, is such that reasonable persons could not differ in their judgment.... [I]f there is room for diversity of opinion among reasonable people, the question is one for the jury." *Korean Air Lines Co. v. State*, 779 P.2d 333, 338 (Alaska 1989) (citations and quotations omitted). Since the evidence does not compel the conclusion that an agency relation existed, we must affirm the decision of the superior court.

■ Under Alaska law, " 'an agency relation exists only if there has been a manifestation of the principal to the agent that the agent may act on his account and consent by the agent so to act.' " *Bruton v. Automatic Welding & Supply Corp.*, 513 P.2d 1122, 1126 (Alaska 1973) (citation omitted) (quoting Re-

statement (Second) of Agency § 15). If the arrangement required Satterwhite to "act on Keys's account, subject to Keys's control," an agency relation existed, and Harris's and Moore's claims regarding the nature, scope, and duration of that relation would merit consideration. *Restatement (Second) of Agency* § 1. However, if the arrangement were characterized as an agreement in which Satterwhite would live in the motor home on site in exchange for such benefits as might accrue to Keys from occupancy by Satterwhite, Keys and Satterwhite would have been landlord and tenant, or bailor and bailee (given the personal property nature of the motor home[7]) and not principal and agent.[8] *See id.* (holding that loan of tractor was a bailment, and did not create agency relation).

■ Alaska case law does not delineate precisely between an agency relationship and a landlord-tenant relationship or a bailor-bailee relationship. Every non-gratuitous tenancy or bailment results in the tenant/bailee serving the purposes of the landlord/bailor, which arguably could be "acting on the account" of the owner. Indeed, it is clear that, when Satterwhite began occupying the motor home, he served Keys's purposes by living at the site.[9] However, Harris and Moore cite no authority, and we are aware of none, which indicates that every tenancy or bailment which serves the owner's purposes renders the tenant/bailee an agent of the owner. Indeed, other jurisdictions recognize "bailments for hire" or "bailments for mutual benefit," but do not characterize such relationships as agency relationships. *See, e.g., Waggoner v. General Motors Corp.*, 771 P.2d 1195 (Wyoming 1989) (recognizing bailment for mutual benefit); *see also Bannister v. Hertz Corp.*, 316 S.C. 513, 450 S.E.2d 629, 630 (App.1994) (holding that bail-

---

7. "A relationship of bailor-bailee arises when the owner, while retaining general title, delivers personal property to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled." *Bruton*, 513 P.2d at 1126 (citation and quotations omitted).

8. "[A] bailee has, *as such*, no power to subject the bailor to liability in contract or tort." *Bruton*, 513 P.2d at 1126 (citations and quotations omitted). However, a bailee *may* also qualify as

an agent if the bailor retains control of the transaction. *Nava v. Truly Nolen Exterminating*, 140 Ariz. 497, 683 P.2d 296, 299 (App.1984).

9. It is undisputed that Keys initially permitted Satterwhite to live in the motor home in exchange for services, although the parties dispute whether those services included work beyond theft deterrence and whether Satterwhite continued to serve Keys's purposes after leaving the motor home for several weeks in November.

ment, whether gratuitous or for hire, does not render bailor responsible for negligent uses of property where bailor has relinquished control of that property). Similarly, "[i]t is accepted law that the relationship of lessor and lessee is not that of principal and agent." *DeArmon v. B. Mears Corp.,* 312 N.C. 749, 325 S.E.2d 223, 227 (1985) (quoting *Brown v. Ward,* 221 N.C. 344, 20 S.E.2d 324, 326 (1942)); *see also Coe v. Esau,* 377 P.2d 815, 818 (Okla.1963) ("[T]enancy alone will not render the landlord liable for the torts of his tenant."). Mere occupancy of the motor home by Satterwhite and performing the duties that one would ordinarily expect of a tenant or bailee occupant would not entail sufficient acting on the account of Keys to create an agency relationship.

■ Further, the Restatement's requirement that an agent act "on the principal's account" should be interpreted as requiring action under the principal's control, rather than merely action which serves the principal's purposes. *See Nava v. Truly Nolen Exterminating,* 140 Ariz. 497, 683 P.2d 296, 299 (App.1984) (holding that crucial distinction between agency and bailment is "the bailee's freedom from control by the bailor"). Hence, if the jury could have concluded that the services to be performed by Satterwhite for Keys did not go beyond those inherent in a normal landlord-tenant or bailor-bailee relationship, or if the jury could have concluded that Satterwhite was not subject to control by Keys, its conclusion that no agency relationship existed had sufficient support to withstand review.

There was evidence that the agreement concerning the use of the motor home was that Satterwhite could live in it. His only duty was to keep it clean and not permit any smoking in it. From this evidence the jury could have concluded that there was no agreement for services beyond that inherent

in a normal landlord-tenant or bailor-bailee relationship and therefore no agency relationship was created.

Concerning the issue of control, Satterwhite failed to keep the motor home clean, despite the fact that Keys permitted him to live there only on the condition that he keep the motor home clean. In addition, Satterwhite abandoned the site for several weeks without informing Keys, and then returned without Keys's knowledge or consent. Moreover, Satterwhite allowed Harris to stay at the site even though Keys had ordered Harris to leave. On this evidence, a jury could conclude that Keys did not in fact exercise control of Satterwhite's conduct at the site. It is less clear whether Keys had the right to control Satterwhite, but declined to exercise that right, or whether Keys lacked the right entirely. However, Keys's failure to exercise control, despite the fact that Satterwhite had nearly destroyed his motor home, suggests that the ability to control was absent. Based on this evidence, a jury could conclude that Keys retained no right to control Satterwhite beyond the right to terminate the bailment or tenancy and expel Satterwhite from the motor home. From this conclusion, it would also follow that Keys and Satterwhite were not principal and agent.

Since a jury could reasonably conclude that Keys and Satterwhite were not principal and agent,[10] the jury's conclusion that no agency relationship existed must be upheld.[11]

B. *The Jury Instructions Do Not Constitute Reversible Error.*

■ "In evaluating whether there has been prejudicial error, the reviewing court must put itself in the position of the jurors and determine whether the error probably affected their judgment." *Vincent by Staton v. Fairbanks Mem'l Hosp.,* 862 P.2d 847, 851 (Alaska 1993). This court reviews the ques-

10. Harris and Moore also attempt to hold Keys liable on the theory that Satterwhite was an independent contractor, whom Keys negligently failed to oversee. The jury considered this claim and found that Keys was not negligent. Harris and Moore state no basis for disturbing this verdict on appeal.

11. Since a master and servant relationship is a specialized type of agency relationship, *see Restatement (Second) of Agency* § 2 (1958), cmt. a ("A master is a species of principal and a servant is a species of agent."), the jury's conclusion that no agency relationship existed obviates the need to consider the existence and scope of any master and servant relationship between Satterwhite and Keys.

tion *de novo. Conam Alaska v. Bell Lavalin Inc.*, 842 P.2d 148, 153 n. 9 (Alaska 1992). While the instructions were not a paradigm of clarity, they do not constitute grounds for reversal.

■ The instructions required the jury to consider whether Satterwhite was an agent of Keys before considering whether he was a servant of Keys. Under the *Restatement (Second) of Agency*, a master and servant relationship is a specialized form of agency relationship. *Restatement (Second) of Agency* § 2 (1958), cmt. a ("A master is a species of principal and a servant is a species of agent."); *see also id.* § 25 ("The rules applicable generally to principal and agent as to the creation of the relation ... apply to master and servant."). Accordingly, absent a finding that an agency relationship existed, the jury had no basis for concluding that a master and servant relationship existed. The jury instructions were unclear in that the jury was not instructed that a servant or employee is a subspecies of agent.[12] However, we find it unlikely that this error affected the jury's judgment. In final argument, both counsel treated the issues of agency and master and servant as essentially the same question, disregarding any distinction between an agent and a servant. In the absence of any indication that the jury might have been led to believe that the definition of an agency relationship would not include a master and servant relationship, we are unable to say that the instruction or the Special Verdict Form had any likely effect on the verdict.

### C. *The Superior Court Did Not Err by Excluding Elizabeth's Diaries.*

■ Harris and Moore contend that the superior court wrongly excluded Elizabeth's diaries, which supported Satterwhite's claim that he worked for Keys. "This court reviews the superior court's decisions on the admissibility of evidence for an abuse of discretion." *Estate of Arrowwood v. State*, 894 P.2d 642, 646 n. 13. (Alaska 1995). An abuse of discretion exists only if the reviewing court is "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." *Colt Ind. Operating Corp. v. Frank W. Murphy Mfr.*, 822 P.2d 925, 932 (Alaska 1991). The diaries are hearsay,[13] and the hearsay exceptions which Harris and Moore cite do not apply. This claim therefore fails.

■ Harris and Moore base their first argument for admission of the diaries on Alaska Rule of Evidence 803(6), the "business records" exception to the hearsay rule. This exception allows admission of a record made "from information transmitted by[ ] a person with knowledge acquired of a regularly conducted business activity ... if it was the regular practice of that business activity to make and keep the memorandum ... unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." The accuracy of the diaries, the significance of the entries, and whether the entries were made routinely were subject to much dispute and conflicting evidence. In light of the evidence that the diaries were inaccurate and were not regularly kept and the dispute concerning the significance of those entries that were made, we conclude that the superior court did not abuse its discretion in excluding them.

■ Harris and Moore also cite Alaska Rule of Evidence 803(5), which allows admission of a "record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowl-

---

12. Alaska Civil Pattern Jury Instruction 23.03 provides a less complex manner of presenting the issues of agency and respondeat superior to a jury. That instruction squarely addresses the issue of respondeat superior without first considering whether any form of agency relationship existed. Harris and Moore requested that the pattern instruction be given. In our view, the

trial court abused its discretion in failing to grant that request. However, this error was harmless.

13. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Alaska R. Evid. 801(c).

edge correctly."[14] While Keys questioned the accuracy of Satterwhite's memory, Satterwhite never expressed any difficulty recalling whether he cut wood at the site. The entries therefore do not concern "a matter about which a witness once had knowledge but now has insufficient recollection" to discuss accurately. Alaska R. Evid. 803(5). As a result, the superior court's refusal to apply this exception was not an abuse of discretion.

### D. The Superior Court's Refusal to Permit the Untimely Addition of Witnesses Did Not Constitute Error.

Harris and Moore also challenge the superior court's refusal to allow them to add witnesses to the trial list, or to admit the hearsay statements of those witnesses. The superior court's decision concerning the addition of the witnesses is reviewed for an abuse of discretion. *Alaska Airlines, Inc. v. Sweat,* 568 P.2d 916, 933 (Alaska 1977) (holding that trial court's refusal to permit testimony of witnesses not on witness list was not abuse of discretion). The court's exclusion of the statements of those witnesses is also reviewed for an abuse of discretion. *Arrowwood,* 894 P.2d at 646 n. 13.

Harris and Moore contend that they were unable to present the added witnesses in a timely fashion, because Keys's false claim that he had no employees delayed discovery of those witnesses. This contention was not raised below, and therefore will not be considered on appeal. *Wettanen v. Cowper,* 749 P.2d 362, 364 (Alaska 1988) (holding that arguments not raised below are considered waived on appeal absent plain error). Harris and Moore did discover this evidence following the permitted late addition of another witness. However, no authority indicates that once a trial court permits late addition of a witness, it also must permit addition of any witnesses revealed by information that witness provides. Moreover, the testimony of the added witnesses would have been cumulative, since they were called to show that Keys paid other employees with barter, and another of Keys's employees testified to that effect. Since the superior court had great discretion regarding late addition of witnesses, this claim fails.

Harris and Moore also challenge the superior court's refusal to admit the hearsay testimony of these employees under the exception for admission of a party opponent or the agents thereof. Alaska R. Evid. 801(d)(2)(D). "[T]he existence of an agency relation cannot be proved by the alleged agent's extra-judicial statements." *Ellis v. Kneifl,* 834 F.2d 128, 131 (8th Cir.1987) (holding that law clerk was not agent of judge); *see also United States v. Portsmouth Paving Corp.,* 694 F.2d 312, 321 n. 12 (4th Cir.1982) ("[T]o avoid bootstrapping, agency must be demonstrated without the help of the statement sought to be admitted.").[15] The statements which the superior court excluded were offered to establish that the declarants were agents of Keys. Under *Ellis,* the court's refusal to allow the alleged agent's extra-judicial statements to be used to demonstrate an agency relationship was correct. The fact that another witness testified that he met these witnesses on a charter he booked through Keys might indicate that an agency relationship existed. *See Portsmouth Paving,* 694 F.2d at 322 (holding that agency relationship was demonstrated by the fact that alleged agent answered the phone at employer's business). Nevertheless, since this fact did not establish that the witnesses at the charter were employees of Keys, as opposed to independent contractors, the superior court did not abuse its discretion by refusing to admit the statements.

### E. The Superior Court's Refusal to Shift the Burden of Proof Due to the Spoliation of Evidence Was Not Reversible Error.

Harris and Moore contend that Keys's cleaning of the motor home hindered

---

14. Keys contends that the exception does not apply because Satterwhite himself did not make the entries. However, Satterwhite claimed to have verified the entries when they were made. This claim could support a ruling that Satterwhite adopted the statements when made. This contention therefore fails.

15. While the noted cases involve the federal rules of evidence, the Alaskan rule in question follows the federal model. Fed.R.Evid. 801(d)(2)(D).

their efforts to show that Satterwhite's negligence caused Harris's injuries, and that the superior court erroneously refused to shift the burden of proof on that issue. However, the jury found for Harris and Moore on this point. Since Harris and Moore prevailed on the issue which they claim the destroyed evidence would impact, they were not prejudiced by the alleged error. This claim therefore lacks merit.

### F. Keys Is Not Liable for Failing to Allow Moore to Rescue Harris.

 Harris and Moore argue that Keys negligently failed to permit Moore to rescue Harris, by refusing to give Moore a key to a gate which barred the road to the motor home. The jury considered this claim and did not find Keys negligent. Since this claim presents a question of fact, the jury's decision must be upheld unless "reasonable persons could not differ in their judgment" to the contrary. Korean Air Lines, 779 P.2d at 338.

Under Section 327 of the Restatement (Second) of Torts (1965), if Keys knew or had reason to know that a third party was prepared to give aid which was necessary to prevent harm to Harris, and Keys negligently prevented that person from doing so, Keys would be liable for any harm which Harris could have avoided absent Keys's negligence. Keys knew that Moore was prepared to aid Harris, but failed to give Moore the key to

the gate. However, Moore's driver testified that he could have driven around the gate if the need arose. As a result, the jury could conclude that Keys's failure to give Moore the key did not prevent Moore from aiding Harris. Moreover, a jury could find that Keys had a reasonable basis to believe that Satterwhite and Harris were not in danger, as indicated by Satterwhite's own statement to Keys. This conclusion could support a finding that Keys was not negligent, either in failing to permit Moore to rescue Harris, or in failing to rescue Harris himself. Since the jury's conclusion has ample support, we will not disturb that conclusion.

### G. Harris and Moore Have Waived Any Objection to the Lack of a Judgment against Satterwhite.

 On appeal, Harris and Moore challenge the superior court's failure to enter a judgment against Satterwhite.[16] Harris and Moore may have submitted a Proposed Special Verdict form, which permitted judgment against Satterwhite alone.[17] However, the superior court used a different form which did not allow for such a finding. Harris and Moore submitted detailed objections to that form, but made no objection based on the failure of that form to allow for a judgment against Satterwhite.[18] Harris and Moore did not object to the court's failure to enter a judgment against Satterwhite until the court began to prepare the final judgment form.[19]

---

**16.** Alaska Civil Rule 14 permits a plaintiff to obtain a judgment against a third party defendant. Alaska R. Civ. P. 14(c). Benner v. Wichman, 874 P.2d 949 (Alaska 1994) suggests that such a judgment was permissible prior to the enactment of Civil Rule 14. Id. at 958 (holding that jury may apportion fault to third party defendants).

**17.** A factual dispute exists as to whether Harris and Moore actually submitted this form to the court. Harris and Moore argue that this item should have been included in the record. We remanded this issue to the superior court, which found that this form was not part of the record, and that Harris and Moore mis-remembered the discussion of the form at trial. Moreover, even if this form had been made part of the record, it would not alter our resolution of this issue. This "working draft" dealt primarily with Keys's responsibility for Satterwhite's conduct. The mere fact that this form also would have permitted

judgment against Satterwhite would not be sufficient, in and of itself, to support the claims of Harris and Moore that the issue of a separate judgment against Satterwhite was properly raised and argued to the court below.

**18.** Harris and Moore claim to have objected at this point. However, the record does not support their claim. Moreover, the trial judge has no recollection of any objection based on the absence of a provision permitting judgment against Satterwhite, but instead remembers Harris's and Moore's objections as relating to the vicarious liability issues.

**19.** Harris and Moore asked the court to instruct the jury to consider damages after finding that Satterwhite was not an agent of Keys. However, this request was premised on their claim that Satterwhite could be a servant but not an agent, and had no bearing on a possible judgment against Satterwhite alone.

At that point, the jury had been excused, but had not considered either Harris's comparative negligence or the amount of damages which Harris might recover against Satterwhite. This post-verdict objection was therefore untimely; it was not properly presented to the court below. "Arguments not raised in the trial court are waived and will not be considered on appeal, except to the extent that plain error has been committed." *Wettanen*, 749 P.2d at 364. This claim therefore fails.

## IV. *CONCLUSION*

Since a reasonable mind could accept the jury's conclusion that Keys is not liable for Satterwhite's conduct, that conclusion will not be disturbed on appeal. The challenges to the jury instructions and various evidentiary rulings all lack merit. Accordingly, the decision below is AFFIRMED.

EASTAUGH, J., not participating.